In the Matter of the Application for Letters of Guardianship of the Person and Property of JOEL W. THORNE, JR., an Infant.

SAMUEL THORNE et al., Appellants; MARY C. THORNE, Respondent.

**Parent and child — infants — domicile — jurisdiction — domicile of child that of father or mother — decree of divorce against wife granting custody of child to husband disposes of custody merely as between husband and wife — rights of mother to custody revived by death of husband and her domicile fixes that of child — right to care and custody superior to all unless shown anew that she is unfit — Surrogate's Court of county where father was domiciled without jurisdiction to appoint guardian where mother resided in another county of State.**

1. At common law the domicile of an infant was that of the father even though the child was in fact living apart from him. When the father died the mother became the head of the family, and the domicile of the child automatically, in legal contemplation, attached to hers. At the present day the residence of the infant is no longer exclusively that of the father. As the mother is the joint guardian of the children with her husband, her rights of custody are equal to his and where they are taken from her by a judgment of divorce they are revived as against the world by the death of the husband.

2. A decree of divorce against a wife awarding to the husband custody of their infant child and finding that she was not fit, competent or a proper person to have custody of it, merely disposes of the question of the custody of the child as between the husband and wife, and where the husband thereafter dies, the wife is entitled as a parent to apply in the county of her domicile for letters of guardianship as against the world.

3. The court may in its discretion appoint another person if there are reasons why the mother should not be appointed, but her right as a parent, not as a married woman, to the care and custody of the child becomes superior to that of all others unless it should be shown anew by the child's relatives or custodians that she is an unfit person to exercise such guardianship. The judgment of divorce may be evidence that she is unfit, but it is not conclusive. It does not bar her right to apply for letters of guardianship and her domicile fixes the domicile of the child.

4. The Surrogate's Court of Dutchess county, where the father resided up to the time of his death, had, therefore, no jurisdiction, where the mother was domiciled in New York county, to appoint guardians of the person and property of the infant (Sur. Ct. Act, § 174) and such letters were properly vacated on her application.

*Matter of Thorne*, 212 App. Div. 654, affirmed.

(Argued June 1, 1925; decided July 15, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 27, 1925, which reversed an order of the Dutchess County Surrogate's Court denying a motion to vacate two orders appointing guardians of the person and property of Joel W. Thorne, Jr., an infant under the age of fourteen years, and granted said motion.

*Chase Mellen* and *William Hazen Peck* for appellants. The infant's residence on May 30, 1924, was and continued to be Dutchess county; and the Surrogate's Court of that county had jurisdiction over said infant to appoint guardians pursuant to section 174 of the Surrogate's Court Act. (*Brown* v. *Lynch*, 2 Bradf. 214; *Kennedy* v. *Ryall*, 67 N. Y. 379; *Matter of Hubbard*, 82 N. Y. 90; *Matter of Kiernan*, 38 Misc. Rep. 394; Schouler's Mar.,

Div., Sep. & Dom. Rel. [6th ed.] 928; Dicey on Domicile, 101; *Purdy* v. *Ernst*, 93 Kans. 157; *Desribes* v. *Wilmer*, 69 Ala. 25; *Trombo* v. *Richardson*, 18 Ky. L. 878; *Cox* v. *Boyce*, 152 Mo. 576; *Wilkinson* v. *Deming*, 80 Ill. 342; *People* v. *Small*, 237 Ill. 169.)

*John J. Kirby* and *Frank C. Laughlin* for respondent. The infant now is and has been since May 30, 1924, domiciled in New York county and the surrogate of New York county alone has jurisdiction to appoint a guardian of his person and property. Hence the orders of the Surrogate's Court, Dutchess county, entered herein on July 2, 1924, are absolutely void for want of jurisdiction. (*Ryall* v. *Kennedy*, 67 N. Y. 379; *Brown* v. *Lynch*, 2 Bradf. Surr. 214; *Matter of Hubbard*, 82 N. Y. 90; *Matter of Kiernan*, 38 Misc. Rep. 394; *Mann* v. *Robertson*, 80 Ark. 350; *Taylor* v. *Jeter*, 33 Ga. 195; *Marks* v. *Marks*, 75 Fed. Rep. 321; *Modern Woodmen* v. *Hester*, 66 Kans. 129; *Garth* v. *City Savings Bank*, 120 Ky. 280; *DeJarnett* v. *Harper*, 45 Mo. App. 415; *Matter of Russell*, 64 N. J. Eq. 313; *School Directors* v. *James*, 2 Watts & S. 568.)

POUND, J. By a judgment of divorce against Mary Casey Thorne, the respondent herein, custody of the infant child of herself and her husband was awarded to the husband and she was found not fit, competent or a proper person to have custody of it. Thereafter the husband died. His domicile and, therefore, that of the child up to the time of his death was in Dutchess county. The mother is domiciled in New York county. The child is not in her actual custody. Dutchess County Surrogate's Court, without citing her, appointed guardians of the person and property of the infant. She thereafter appeared and moved to vacate the letters of guardianship on the ground that the court had no jurisdiction to appoint guardians; that the Surrogate's Court of New York county alone had such jurisdiction for the reason that on the death of the father the domicile of the mother

became the domicile of the child.  Her motion was denied. The Appellate Division reversed and granted an order vacating the letters of guardianship .

The question is as to the jurisdiction of the Surrogate's Court of Dutchess county.  The Surrogate's Court Act (§ 174) provides:

" Where an infant has no guardian, a surrogate's court has jurisdiction to appoint a general guardian of an infant's person, or property, or of both, in the following cases:

" 1. Where the infant is a resident of that county, or has sojourned in that county for at least one year immediately preceding the application.

" 2. Where the infant is not a resident of the state, but has property, real or personal, situated in that county."

The appellants contend that because the mother was, by the decree of divorce, adjudged to be an unfit person to have the custody of the child, the general rule that infants have the domicile of the father and after his death the domicile of the mother ceases to apply and that the legal domicile of· the infant remained in the county of the father's domicile.  Their position rests wholly on the proposition, not that the child had in fact a residence of its own in Dutchess county or was sojourning there, but that the law continued his domicile in Dutchess county *ex necessitate* as if both parents were dead and the child had acquired no domicile with his natural guardian.  (*Lamar* v. *Micou*, 114 U. S. 218, 223.)  They contend that on this proposition, Dutchess County Surrogate's Court had jurisdiction to appoint a guardian whether or not the child actually dwelt in Dutchess county.

The question is an interesting one which leads into the shadow land whence legal fictions have their origin.

Why at common law was the domicile of an infant necessarily that of the father?  Not because the child

actually resides with him and is a part of his family. Rather because of the *patria potestas* of the father; the tutelege of the child and the headship of the family of which the child is a part; the reciprocal rights and duties of father and child. " The legal inseparability of father and child is essential to their ·mutual legal obligations." (Beale on Domicil of an Infant, 8˙ Cornell Law Quarterly, 103.) Even though the child is in fact living apart from the father, his legal domicile was nevertheless with the father. (*Murdock* v. *Ward*, 67 N. Y. 387.) When the father dies the dead hand does not hold the child at the· father's domicile. The mother becomes the head of the family. She succeeds to. his rights and duties. She may determine where the infant may live. His domicile automatically in legal contemplation attaches to hers. This right rests not on the actual custody of the child but on the right of the mother, the *matria potestas*.

The decree of divorce merely disposed of the question of the custody of the child as between husband and wife. This ˙is the rule in most jurisdictions that have passed on the question although the contrary doctrine is not without support. (*Barnes* v. *Long*, 54 Ore. 548; 21 Ann. Cas. 465, and cases cited.) As between them the court held that she was not fit, competent or a proper person to have custody of the infant child. She ceased to be a married woman and joint guardian of her child but she still remained his mother. Her rights of joint guardianship with her husband (Dom. Rel. Law, § 81) were taken from her but when he died the domicile of the child was not left in doubt. She became entitled as a parent to apply in the county of her domicile for letters of guardianship as against the world. It does not follow that she is entitled to receive such letters. Under the circumstances it may be assumed that the relatives and the person actually in care and custody of the infant would be cited to show cause why she should not be appointed. (Surrogate's Court Act, § 177.) The surrogate may in his dis-

cretion on her application appoint another person if there are reasons why the mother should not be appointed. (Surrogate's Court Act, § 179.)

The Surrogate's Court of Dutchess county had no jurisdiction to appoint a general guardian unless the infant was a resident of the county. (Surrogate's Court Act, § 174.) Residence and domicile here mean the same. The infant, generally speaking, has no legal residence of his own, whatever his place of abode may be. In this connection the extension of the mother's right of joint guardianship seems relevant as bearing on the practical result. The identity of person of husband and wife is no longer a fetish of the law. The residence of the infant is no longer exclusively that of the father. It may be the residence either of the father or the mother. As the mother is the joint guardian of the children with the husband, if the wife has selected her own domicile, as she may, whenever it is necessary or proper for her to do so (*Williamson* v. *Osenton*, 232 U. S. 619; *Shute* v. *Sargent*, 67 N. H. 305; *Matter of Florance*, 54 Hun, 328), and the child lives with her, the domicile of the mother is for the time being the domicile of the child. Her rights of custody are equal to those of the father. In this case the mother's rights were taken from her by the judgment of divorce but were revived as against the world by the death of the husband. My learned brother LEHMAN concedes that letters of guardianship should not have been granted by the Dutchess County Surrogate's Court without notice to her; that she has not been " judicially deprived of the custody of the child " in the sense that a citation need not be issued to her under Surrogate's Court Act (§ 177). The dilemma, it would seem, is this: Shall she be ignored as an outcast or recognized as a mother? If she is not to be ignored, if the child is still her child, her rights must be regarded. Her right as a parent, not as a married woman, to the care and custody of the child becomes superior to

29

that of all others unless it should be shown anew by the child's relatives or custodians that she is an unfit person to exercise such guardianship. The judgment of divorce may be evidence that she is unfit, but it is not conclusive. It does not bar her right to apply for letters of guardianship. Her domicile fixes the domicile of the child, " the technically preeminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined." (HOLMES, J., in *Williamson v. Osenton, supra,* p. 625.) Otherwise the child has no domicile for an infant cannot choose a residence. The child resides with his mother in the contemplation of the law, even though he be living elsewhere, until otherwise disposed of by competent authority and that authority, so far as this case is concerned, is the Surrogate's Court of the county of the mother's domicile.

It is urged that practical difficulties are in the way of the application of this rule of domicile to cases where the mother is a non-resident and the child is in the State. They may be easily surmounted. If the mother is a non-resident of the State but the infant has property, real or personal, situated in the county, the Surrogate's Court of the county may appoint a guardian (Surrogate's Court Act, § 174), so if the mother lives in China or Peru a guardian might be appointed here if such jurisdictional facts appeared. If a mother in China or Peru were not asserting her rights of guardianship, the Surrogate's Court of the county of actual sojourn of the child might have jurisdiction to appoint a guardian of the person and the property. (Surrogate's Court Act, § 174.) Nor is the jurisdiction of the Surrogate's Court exclusive. The jurisdiction of the Supreme Court to appoint guardians of infants within the jurisdiction does not depend upon the legal domicile of the infant if the infant is actually dwelling within the State. (*Matter of Hubbard,* 82 N. Y. 90.) But here we have to consider only the jurisdiction

of the Surrogate's Court of Dutchess county in this case and we conclude that it was without jurisdiction.

The order should be affirmed, with costs.

LEHMAN, J. (dissenting).   The domicile of the infant during the life of his father, Joel Wolfe Thorne, was unquestionably in Dutchess county, where his father lived.   By the decree which dissolved the marriage of his parents, sole custody of the infant was awarded to the father, and since the infant is in law incapable of creating an independent domicile, his domicile followed that of the parent, in whom custody and right of control was vested. If there had been no divorce the domicile of the father would have been in law also the matrimonial domicile of the mother, but after his death she could have changed her domicile.   Ordinarily she would as sole guardian by nature of her children have the right to their custody, and the same reasons that form the basis for the rule that the domicile of the infant is in law fixed by the domicile of his father during his life should lead to the rule that, after the father's death, the mother by changing her own domicile may ordinarily change the domicile of the infant.   That rule is supported by the great weight of authority.   Because of that rule the courts below have held that at the death of the father the domicile of the mother automatically became the domicile of the infant, though the mother's marriage was dissolved and she had been deprived of the custody of the infant. In that conclusion I cannot concur.

While the domicile of the infant does not depend either upon the physical presence of the infant or upon the infant's intention, the rules governing the infant's domicile are not entirely artificial or arbitrary.   The law places the infant's home at the home of his parent or parents, because to some extent it regards the family as inseparable and that is the place where an infant would naturally reside, since the infant may not decide for himself where

he will permanently reside. That residence, once fixed, remains the infant's residence until changed by removal, actual or constructive, to another home. The reason for the rule that an infant's domicile after the father's death is the domicile of the mother completely fails unless the mother also has at the time lawful custody of the child; unless in law she is the head of the family. If one parent has abandoned the child, if he or she has been deprived of the right of custody and may not until custody is restored by the courts determine where the child shall reside, then both reason and practical considerations dictate that until the courts have acted, the domicile of the child remains unchanged.

In the present case the courts decreed in the divorce action that the father should have custody of the child. Death of the father has intervened and ended his custody. So far at least the decree can no longer have force. The decree, however, did more; it dissolved the marriage and it ended the mother's joint right to custody with the father. It is said that the mother's right to the custody of the child as the surviving parent came into existence when the father died, even though the decree of divorce ended her joint guardianship; that she is the guardian by nature even without appointment by the court. When a court passes upon the custody of the child in a divorce action, its first consideration should be not the rights of the parents, but the welfare of the child. The right, founded in nature, of the mother to have custody of her child is recognized by the law, but a mother may deprive herself of that right by her own wrong, and here the court has determined that the mother was unfit to have such custody. After her husband's death, until the custody of the child is awarded to some one else, she may have the right to urge that, despite the fact that she was deprived of joint guardianship of the child, its custody should be awarded to her rather than to a third party. For that reason I think that she should have received notice of

the application for the appointment of a guardian, and
that the motion to vacate the letters of guardianship
issued without notice to her should have been granted.
While under the provisions of section 177 of the Surro-
gate's Court Act, citation is not necessary to a parent who
is " judicially deprived of the custody of the child,"
I think that it appears from the context that the Legis-
lature did not intend to include a case where the indirect
effect of the award of the custody of a child to one parent
was to deprive the other parent of its custody.    None
the less, that was the effect of the decree of divorce against
this defendant.    It deprived her in fact of the custody of
the child.    She lost the right founded in nature and
recognized by law, because the court has found that
she broke her marriage vows and was not " a fit or
competent or proper person to have the custody of the
infant child."    Though the father can no longer care for
the child, custody may not without disregard of the
child's welfare be restored to the mother without further
judicial inquiry.    Unless and until custody is thereafter
awarded to her, she has no control  of the child, and having
no control cannot change its domicile.    Anaolgy may be
found in the provisions of section 111 of the Domestic
Relations Law in regard to consent to adoption.    Con-
sent of a parent who has been divorced for his or her
adultery is not a necessary prerequisite to the adoption,
but notice is necessary.    Here we may find support for
the view that the decree of divorce deprives the parent
of any *rights* to custody, but yet the parent should be
given notice of any proceedings which might affect that
child's permanent custody.

It seems to me that the opposite view is bound to pro-
duce anomalous and impractical results.    If the mother
makes no claim to guardianship, is the child without any
domicile?    If the guilty parent moves to a jurisdiction
where different standards of moral conduct prevail, and
there applies for guardianship of the child, must the

courts of this State recognize the decree of the foreign courts though the child did not by his own act or the act of the innocent parent ever submit to the jurisdiction of the foreign courts? Though the courts of this State might under the provisions of the Surrogate's Court Act (§ 174) appoint a guardian under some circumstances, even if the domicile of the child is elsewhere, yet the jurisdiction is not complete and the courts of the place of the child's domicile remain in general the proper tribunals to determine the right to the custody of the child. The fact that in this case the dispute is as to the jurisdiction of the courts of two counties within the State does not change the principle involved. The domicile of the child at the death of the father, who had the exclusive right to its custody, was in Dutchess county. Though the mother has an interest in the child's welfare and after the father's death is not precluded from asking that the custody of the child be awarded to her, yet until the custody is awarded neither she nor any one else has any right in law to control the movements of the child or to insist that her home be the home of the child, and, therefore, she cannot change the child's domicile. It follows that though the order denying the motion to vacate the letters of guardianship should have been granted, jurisdiction to appoint is still in the Surrogate's Court of Dutchess county.

CARDOZO, McLAUGHLIN and ANDREWS, JJ., concur with POUND, J.; HISCOCK, Ch. J., and CRANE, J., concur with LEHMAN, J., dissenting.

Order affirmed, with costs.