In the Matter of the Estate of JOEL THORNE, JR., Infant.

Surrogate's Court, New York County, November 20, 1925.

**Guardian and ward — proceeding for appointment of guardian of person and property of infant — mother appointed in conjunction with coguardian — Surrogate's Court Act, § 173, applied — persons identified with relatives through whom infant received estate appointed guardians of property.**

The petitioner herein, mother of an infant eleven years of age, who, by decree of divorce was deprived of the custody of the child, is entitled to appointment as guardian of the person of said infant in conjunction with a coguardian, since it appears that the petitioner has led an honorable life for the last four years and is a fit and competent person to have the custody of her son in view of his father's death.

This is the determination of the surrogate, pursuant to section 173 of the Surrogate's Court Act, notwithstanding the fact that a stipulation has been entered into reciting that the mother will be appointed guardian of the person of the infant jointly with a third party.

Persons identified with the paternal relatives of the infant, through whom his estate came to him, are appointed guardians of his property.

PROCEEDING for appointment of guardian of person and property of infant.

*John J. Kirby* [*Frank C. Laughlin* of counsel], for the petitioner Mary Casey Thorne.

*Delafield, Thorne & Burleigh* [*Chase Mellon* of counsel], for Edwin Thorne.

*Hunt, Hill & Betts*, for Samuel Brinckerhoff Thorne and others.

FOLEY, S.   This proceeding was brought for the appointment of guardians of the person and property of the infant, who is eleven years of age.   At the beginning of the proceeding a question arose as to whether the Surrogate's Court of New York county, the domicile of the mother, or that of Dutchess county, where the father was domiciled at the time of his death, had jurisdiction to entertain it and to make the proper decree.   I held in my opinion, reported in *Matter of Thorne* (123 Misc. 621), that this court had exclusive jurisdiction of the matter.   The surrogate of Dutchess county, on the other

hand, held that he had jurisdiction.   On appeal from his decree, the Court of Appeals sustained the jurisdiction of this court, held that the Dutchess county decree was void and determined that after the father's death the domicile of the infant became fixed at the domicile of his mother in New York county.   (240 N. Y. 444.)   In the prevailing opinion Judge POUND pointed out that the rights of the mother had been taken from her by the decree of divorce against her. By this decree she was deprived of the custody of the child, which was awarded to the father.   But these penalties against her only continued as long as the husband lived.   In discussing the status of the mother, as altered by the death of the father, Judge POUND states: "The dilemma, it would seem, is this: Shall she be ignored as an outcast or recognized as a mother?   If she is not to be ignored, if the child is still her child, her rights must be regarded.   Her right as a parent, not as a married woman, to the care and custody of the child becomes superior to that of all others *unless it should be shown anew by the child's relatives or custodians that she is an unfit person to exercise such guardianship.*"   Subsequently the surrogate proceeded to hear the testimony of the parties upon the appointment of guardians of the estate and person of the infant.   Numerous hearings were had and both sides rested their case.

Before the rendition of my decision I deemed it proper that every effort should be made by the court, the parties and counsel to adjust the unfortunate differences between the mother and the paternal relatives of the infant.   The negotiations for settlement have been guided by the primary test and ultimate aim in the selection of guardians as laid down by all the authorities — the welfare of the infant and his best interests.   All other considerations are subordinate to this purpose.   As a result of these conferences the parties have happily reached a result which has received the approval of this court.   Much credit for this accomplishment is due to Mr. Samuel Brinckerhoff Thorne, one of the paternal relatives and himself an applicant for appointment as guardian of the person of the child.   In addition the counsel for the parties, and particularly former Justice FRANK C. LAUGHLIN, have with commendable zeal materially assisted in the termination of the proceeding.   Long and expensive litigation involving the rights of the parties has thus been ended.

In accordance with the stipulation entered into before me the mother will be appointed guardian of the person jointly with Edward S. Dore, an impartial and fit person of my own appointment.   His selection has also been approved by all the parties.

In the appointment of a coguardian of the person of the infant

I have been guided by the practice followed in a similar case by my predecessor, Surrogate ROBERT LUDLOW FOWLER (*Matter of Lamb,* 139 N. Y. Supp. 685).

Under the provisions of section 173 of the Surrogate's Court Act, the Surrogate's Court has like power and authority to appoint a guardian of the person and property of an infant which the chancellor formerly had. (*Matter of Wagner,* 75 Misc. 419.) Entirely aside from the terms of the stipulation, the surrogate is of the opinion, upon the evidence taken by him, that the mother of the infant has led an honorable life for the past four years. It has been established to my satisfaction that she is at the present time fit and competent to have the custody of her son. (*Matter of Knowack,* 158 N. Y. 482; *Matter of Waring,* 46 Misc. 222.) As stated in *Matter of Knowack* (*supra*), where the circumstances were quite similar: "It seems self evident that public policy and every consideration of humanity demand the restoration of these children to parental control. If the Court of Chancery can interfere and take the child from the custody of its parents, it can also intervene and restore it to their care in the exercise of the same discretionary power."

The advantages to be derived from the arrangement consented to by the parties should prove most valuable to the infant. He has sojourned for the past seven years in Denver, Colo., with a hired custodian obtained by the father through an advertisement. The reputable conduct of the mother for a considerable period of time since the divorce decree and the modern policy of child welfare to retain, as far as possible, the control of the infant in the home of its parent, together with the opportunity for the fostering of the natural affection between mother and son, justify the appointment of the mother as guardian and the award to her of the custody of the infant.

As guardians of the property I shall appoint the Central Union Trust Company, Samuel Brinckerhoff Thorne and Dr. Victor Corse Thorne. The infant's estate came to him through his paternal relatives and it seems proper that the persons just mentioned, who are identified with that side of the family, should be appointed to conserve the infant's funds and to supervise their expenditure under the control of the surrogate.

Decree appointing guardians signed.