In the Matter of the Application of RUTH F. BOCK, Respondent.

HANS BREITUNG, Appellant.

Argued April 3, 1939; decided May 23, 1939.

*Edmond M. Hanrahan* and *Edward A. Silliere* for appel-
lant.   The so-called paramount right of the parent does not
prevail over the welfare and best interests of the infants.

(*Matter of Cross*, 92 Misc. Rep. 89; *Matter of Munn*, 101 Misc. Rep. 171; *Matter of Meyer*, 156 App. Div. 174; *Osterhoudt* v. *Osterhoudt*, 48 App. Div. 74; 168 N. Y. 358; *Matter of Lamb*, 193 N. Y. Supp. 685.) The wishes of the children and their sex should be considered by the court in appointing a guardian. (*Israel* v. *Israel*, 38 Misc. Rep. 335; *Matter of Burdick*, 41 Misc. Rep. 346; *Osterhoudt* v. *Ousterhoudt*, 48 App. Div. 74; 168 N. Y. 358.)

*Arthur Frank* for respondent. The mother's rights to the custody of her children taken away by the divorce decree were restored against the world upon the father's death. She thereupon became entitled to guardianship unless the respondent showed anew that she is an unfit person. This he failed to do, and the Surrogate expressly found that the mother was fit. (*Matter of Thorne*, 240 N. Y. 444; *People ex rel. Boulware* v. *Martens*, 232 App. Div. 258; 258 N. Y. 534.) The decree below by awarding guardianship to the mother follows the settled view that the child's welfare rests in retaining parental control during its minority. (*Matter of Warger*, 153 Misc. Rep. 236; *Matter of Lamb*, 139 N. Y. Supp. 685; *Matter of Tully*, 54 Misc. Rep. 184; *Matter of Thorne*, 126 Misc. Rep. 96; 240 N. Y. 444; *People* v. *Mt. St. Joseph's Academy*, 198 App. Div. 75; 234 N. Y. 565; *Matter of Munn*, 101 Misc. Rep. 171; *Wilcox* v. *Wilcox*, 14 N. Y. 575; *People ex rel. Elder* v. *Elder*, 98 App. Div. 244.)

FINCH, J. The question presented upon this appeal is whether the Surrogate may appoint a brother of the decedent guardian of the person of three sons, aged fifteen, thirteen and eleven, as against the application of the natural mother of these infants, under the facts presented upon this application.

Max Breitung and his wife, Ruth, had three sons. In February, 1933, the father instituted a divorce action in Connecticut, and in that action sought custody of the three infant children. The defendant defaulted and a decree of divorce was awarded, including custody of the three children,

to the father, with an option for custody in the mother during the summer months. About four months later Mrs. Breitung was married to Douglas S. Bock, who had been a neighbor prior to the institution of the divorce proceeding. Mr. Breitung arranged for his three sons to spend the summers of 1935, 1936 and 1937 in the household of Frederick Van Name upon his farm in Maine. In June, 1936, Mr. Van Name also agreed to take the boys for the following two winters into his household in Bronxville, New York. Mr. Van Name had two boys of his own and the five children have attended the same school in Bronxville. Mrs. Van Name was dead and Mr. Breitung joined with Mr. Van Name in selecting a housekeeper for the home in Bronxville.

On August 19, 1937, Mr. Breitung died. He left a will intrusting the care, education and upbringing of the three children to Hans Breitung, his brother. Insurance policies upon his life produced an annual income for their benefit. At the time of the death of their father the children were in Maine, still in the household of Mr. Van Name. They had, therefore, not been with their mother since the divorce in 1933, or for a period of approximately four years. Almost immediately following the death of Mr. Breitung, Mrs. Bock went to Maine and, apparently then for the first time, requested the boys to come and live with her at Port Jefferson. They each refused in turn, and Mrs. Bock returned alone to Port Jefferson. While the children were with Mr. Van Name, both in Maine and in Bronxville, Mr. Breitung visited them, sometimes every day. The uncle, Hans Breitung, intends to move to Bronxville and establish there a home for the boys as members of his household. The Breitung boys prefer to remain in the care and custody of their uncle, Hans Breitung, rather than in the care of their mother, and possess a decided aversion to entering the home of their mother and stepfather.

At Surrogate's Court guardianship of both persons and property was awarded to the uncle. Upon appeal guardianship of the person was awarded to the mother. The Appellate Division based its modification of the decree of the Sur-

rogate's Court in denying guardianship of the person to the paternal uncle and awarding such guardianship to Mrs. Bock, upon the paramount right of the surviving parent to the guardianship of the person, citing section 81 of the Domestic Relations Law (Cons. Laws, ch. 14) and *Matter of Thorne* (240 N. Y. 444). But in *Matter of Stuart* (280 N. Y. 245) we held that section 81 of the Domestic Relations Law was not a bar to the appointment by the Surrogate in a proper case of one, other than a parent, as guardian, of an infant over fourteen years. Also, there we pointed out that *Matter of Thorne* (240 N. Y. 444) involved the guardianship of infants under fourteen years of age. In the case at bar one of the infants was well over fourteen and another almost that age. The status of the two approximately fourteen must determine the status of all, as the three brothers, having lived together all their lives, cannot now be separated without disregarding their best welfare. While it is true that, *prima facie*, a surviving parent has a right to the guardianship of the children, particularly when they are of tender age, yet under all the circumstances the chief consideration must always be what will promote the best welfare of the children. While the circumstances of a particular case must be strong in order to overcome the so-called paramount right of the parent, yet where the circumstances of a particular case contain such evidence, the best interest of the infants must be the guiding principle. The surroundings and associations of the young have so great an effect upon their outlook and so form the basis of their future development that nothing should prevent the courts from considering the human aspects of the question presented.

In the case at bar it appears that, owing to the divorce between the parents and the remarriage of the mother, the children have been separated from the mother almost completely for about four years. The oldest child, who testified, exhibited a feeling of antagonism and a distinct aversion to his mother and stepfather. This can be gleaned even from a reading of his printed testimony. The Surro-

gate examined in private the other two children to learn their wishes. To force these children into an environment to which they are so strongly opposed in any event would be unpleasant and might be attended by very serious results to their development. Then, too, there is the breakup in the continuity of the schooling which they have had in Bronxville. In order to avoid this break their paternal uncle is willing to change his home to Bronxville.

We reach the conclusion, therefore, that the Surrogate was not without power to appoint the paternal uncle, Hans Breitung, guardian of the person as well as of the property, even though no fault or moral turpitude was shown on the part of the mother.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Ordered accordingly.