In the Matter of the Accounting of LUCILLE M. DANIELS, as Administratrix of the Estate of MARY L. DANIELS, Deceased.

Surrogate's Court, Monroe County, November 16, 1948.

*Edward M. Ogden* for administratrix, petitioner.

*Glenn L. Buck* for Roger Daniels, respondent.

WITMER, S. The mother of decedent is the administratrix herein. In an action for causing the wrongful death of the deceased child, the administratrix recovered $3,750 damages. She now petitions for judicial settlement of her account as such administratrix, and seeks to bar the child's father, respondent, from sharing in the proceeds of the action, under subdivision (e) of section 87 and subdivision 2 and paragraph (c) of subdivision 4 of section 133 of the Decedent Estate Law, on the ground that he neglected and refused to provide for decedent and abandoned her.

It appears that petitioner and respondent intermarried in 1939. Deceased was born of this marriage in September, 1943. During arguments between petitioner and respondent, petitioner told respondent that he was not the father of the child. Petitioner explains that she only said this ironically and just to seem to agree with respondent when he accused her of infidelity; but respondent claims that this was the cause of the breakup of the family.

In the fall of 1944, respondent stayed away from home all night occasionally, and one day petitioner found him in a car with another woman (whom he later married), and at that time upon request of petitioner, respondent agreed to return home and agreed that petitioner should invite her parents for Thanksgiving Day dinner and that he would meet the parents at the terminal. He failed to appear on Thanksgiving Day until nearly midnight. Petitioner then went home to her parents, taking the child with her. Thereafter, she made several attempts to get respondent to " straighten up " and take her back. He frequently promised to do so, but failed to keep his promises.

Under date of July 13, 1945, petitioner obtained an interlocutory decree of divorce from respondent at Rochester, New York, which decree was entered in Monroe County Clerk's Office on July 20, 1945, and became final on October 20, 1945. This decree among other things provided " that the plaintiff herein shall have complete care, custody and control of the child of this marriage, to wit, Mary Lou May Daniels." In November, 1945, respondent remarried.

Beginning about August 1, 1945, respondent voluntarily paid petitioner weekly sums of money for the child's support, paying $5 on some occasions and $10 or more on other occasions, averaging about $6 per week, to March, 1946. When he failed to pay after March, 1946, petitioner instituted a proceeding in the Criminal Branch of the City Court of Rochester, and under order of that court respondent paid $67.50 between May 11, 1946, and June 22, 1946. He then went to Ohio and West Virginia, and made no further payments for eleven months. Under order of the Monroe County Children's Court he began about the first week of June, 1947, paying $7.50 per week for the child's support, and paid such sum weekly until the child's death four weeks later.

It appears that respondent bought a present for his child at Christmas time in 1944. He claimed that he also bought one for her at Christmas time in 1945, but petitioner denied this, and his assertion withered under cross-examination. He called on the child only a half dozen times from the time of the separation in October, 1944, until death occurred two and a half years later, such calls generally occurring when he stopped to leave money. The child was too young for him to have correspondence with her, but he claims that he sent her two or three cards. The evidence shows that respondent exhibited little regard or care for his daughter, although it appears that when he saw her he did call her by a pet name.

Under these circumstances is petitioner exclusively entitled to the proceeds of the death action? We are now concerned only in the rights to property; but such rights, under the Decedent Estate Law, depend upon the actions of petitioner and respondent during the child's lifetime. The custody or welfare of the child is not an issue at this time. The evidence concerning respondent's conduct toward his wife and child is very unsavory and elicits no sympathy of the court for respondent. Such evidence, however, bears primarily upon the relationship between petitioner and respondent rather than between respondent and the child. The animosity existing between the parties cannot be permitted to becloud the issues herein.

It is clear that respondent failed and neglected to provide for his child prior to June, 1947. The statutes (Decedent Estate Law, § 87, subd. [e]; § 133, subd. 4, par. [c]) both provide that such neglect shall bar the father from sharing in the child's estate "unless the parental relationship and duties are subsequently resumed and continue until the death of the child." The parental duty of support in this case was determined by the Monroe County Children's Court in the late spring of 1947, and respondent obeyed strictly the order of said court until the child's death four weeks later. Respondent's record of support affords a basis for belief that he would not have continued his duty of support without interruption; but that is speculation. He was paying regularly at the time of the child's death. A parent is granted a reasonable time within which to re-establish broken family relations or obligations. (See *Bohmert* v. *Bohmert,* 241 N. Y. 446, 451 *et seq.; Matter of Bistany,* 239 N. Y. 19.) With respect to the duty of support the parental relationship of respondent to decedent was resumed within the meaning of the statute. (*Matter of Schriffrin,* 152 Misc. 33, 34.)

The statutes above referred to place a further burden upon the respondent, to wit, that of care and training of the child (*Cannon* v. *Cannon,* 287 N. Y. 425, 428–9; *Matter of Schriffrin, supra; Matter of Lascelles,* 68 N. Y. S. 2d 70); and unless respondent has been relieved of such obligation, upon the evidence he must be held to have abandoned the child, and be deprived of the right to share in the proceeds of the action, under the authority of the last-cited cases.

The decree of divorce granted to petitioner the "complete care, custody and control of the child". Respondent was not even granted the right of visitation to the child; but such decree did not as a matter of law deprive respondent of all his rights in the child (*Matter of Thorne,* 240 N. Y. 444, 448). Thereafter, by virtue of the decree respondent was largely relieved of his parental duty of care and supervision of the child. (*Matter of Schriffrin,* 152 Misc. 33, 35, *supra.*) In the face of such decree awarding complete care, custody and control of the child to petitioner, and respondent's compliance with the Children's Court order for support of the child, it cannot be held that respondent has lost his right to share in the decedent's estate. (*Matter of Downs,* 272 N. Y. 664, affg. 248 App. Div. 738, revg. 157 Misc. 293; see *Matter of Willing,* 298 N. Y. 566, affg. 271 App. Div. 935, revg. 43 N. Y. S. 2d 834; *Matter of Anonymous,* 192 Misc. 359; *Matter of Davis,* 142 Misc. 681, 690–691.) In *Matter of Downs* (*supra*) in the divorce decree the wife was

granted the right of visitation, but only availed herself of that right five to ten times during a period of twelve years before the child's death. The decree of the Surrogate denying the wife's right to share in the child's estate was reversed, and her right to share was upheld. Although that decision antedates the amendments of the Decedent Estate Law involved here, it is deemed applicable on the question of abandonment.

In view of the authorities it is held that respondent is entitled as a surviving parent to share equally with petitioner in this estate.

Submit decree accordingly.