bear the expense of the tests. As so modified, the order should be affirmed, without costs.

NOLAN, P. J., WENZEL, MURPHY and UGHETTA, JJ., concur.

Order modified by providing that the motion be granted as to the plaintiff, the defendant, and the twins, that it be denied as to the corespondent, and that defendant shall bear the expense of the tests. As so modified, order affirmed, without costs.

In the Matter of ALBERTO BACHMAN, JR., et al., Appellants, against ANNIE F. MEJIAS, Respondent.

Second Department, March 26, 1956.

*Victor L. Anfuso, Arthur G. Warner* and *James E. Birdsall* for Alberto Bachman, Jr., and Isaias R. Moreno, appellants.

*Frederick T. Shea* and *Francis S. Bensel* for respondent.

BELDOCK, J. This appeal involves a dispute between the mother and paternal grandparents of a six-year-old boy, Alberto Bachman Feliciano, with respect to his custody. Appellants are his father and the duly appointed representative of his paternal grandparents; respondent is his mother. The father and mother were married in Puerto Rico in March, 1947. They have two other children — a boy aged four, and a girl aged two. Only the custody of Alberto is here involved.

After the institution of an action for divorce by the mother in Puerto Rico, the parties and their respective attorneys entered into a stipulation, dated July 23, 1953, fixing the family relations and alimony, providing (1) that the mother was to live in New York with her parents and the two younger children, who were to be brought to Puerto Rico during the school vacation period each year to live with their father and paternal grandparents; (2) that the paternal grandparents in Puerto Rico were to have custody of Alberto, who was to be brought to New York during the vacation period each year to live with his mother; (3) that in the event the paternal grandparents failed to take Alberto each year to New York to spend his vacation with his mother, the latter, in the exercise of her

*patria potestas,* was given power to deprive the grandparents of custody and to require the court to take whatever steps might be necessary to enforce compliance with the stipulation. On the same day (July 23, 1953), the court made an order establishing the family relations and allowances for support, which order incorporated the provisions of the stipulation. Also on the same day, the mother was granted a judgment of divorce on the ground of cruel treatment, which judgment incorporated the order establishing the family relations and recited that the order was the acceptance by the court of the stipulation of the parties. The judgment gave the mother the *patria potestas* over the three children and custody of the two younger children, and gave custody of Alberto to the paternal grandparents under the terms of the stipulation to which reference has been made. Said judgment also provided that the court retained jurisdiction to entertain applications in connection with any incident which might arise concerning alimony or the family relations of any of the parties with the children, upon motion and after hearing the parties.

The mother left Puerto Rico in July, 1953, with the two younger children, and came to New York. She saw Alberto for two weeks in October, 1953. Alberto was next brought to New York in November, 1954, the grandparents claiming that the delay was caused by an operation on the boy's foot. The mother refused to return Alberto to the paternal grandparents. As a consequence, the alimony payments were suspended.

The mother then went to Puerto Rico and on January 25, 1955, invoked the jurisdiction of the Puerto Rico court by filing a petition, which recited that she retained Alberto in New York "because of certain disagreements", for which reason the father suspended alimony payments. A hearing was requested in order that the court might provide for the payment of alimony and make such other pronouncements as would insure the welfare of the minors who are under her *patria potestas.* On February 16, 1955, she filed a complementary motion alleging that the Puerto Rico court has jurisdiction to decide whatever it deems advisable in accordance with the best interests of the minors; that she retained custody of Alberto in New York, in the exercise of her *patria potestas,* because he showed lack of affection for her and for his brother and sister, for which reason she believes that it is best for all the children to live together in order that they have mutual affection for each other. The court was requested to compel the father to pay alimony and to modify the order of July 23, 1953, by restoring the custody of Alberto to her.

On March 17, 1955, the Puerto Rico court made an intermediate order providing that "as a precondition to be heard" with respect to her petition to recover custody of Alberto, she bring Alberto to Puerto Rico by March 21, 1955, and that the father deposit the past-due alimony within twenty-four hours. The mother knew about this order the day it was issued, and she left Puerto Rico immediately. The alimony was deposited. On March 23, 1955, the Puerto Rico court made an order directing the mother to appear within three days to show cause why she should not be punished for contempt for refusing to bring Alberto to Puerto Rico in accordance with the order of March 17, 1955, and directing her to deliver Alberto to the paternal grandfather or to any representative the latter may appoint. The order also recites that it should be enforced by the New York courts as a matter of reciprocity in view of the fact that on previous occasions the Puerto Rico court has enforced New York judgments.

On March 31, 1955, in New York, Alberto's father and the duly designated representative of the paternal grandparents instituted this habeas corpus proceeding asking for delivery of Alberto in accordance with the order of the Puerto Rico court of March 23, 1955.

At the hearing before Special Term, there was testimony that, when Alberto was brought to New York in November, 1954 (he was then five years and ten months old), he bullied his younger brother and sister for about two weeks and then showed them the same affection he had shown them when they had last seen each other in Puerto Rico in July, 1953; that he insulted his mother, but that ended shortly; that he fought with the children in the street, but that changed quickly. It also appeared that on the way from Puerto Rico to New York in November, 1954, the paternal grandparents had bought Alberto a knife as a souvenir from one of the commercialized Seminole Indian villages in Miami, Florida.

Special Term dismissed the writ and directed that the mother should have the sole and complete custody of Alberto, on the grounds (1) that there was a change of circumstances; (2) that the paternal grandparents failed to comply with the Puerto Rico judgment of July 23, 1953, in that they failed to bring Alberto to New York during the vacation period each year; (3) that the mother, in the exercise of the right of *patria potestas,* has made provision for the three children to live together in New York; (4) that the best interests of Alberto require him to reside with his mother, brother and sister in New York.

The Puerto Rico court has power to modify the judgment with respect to custody in accordance with the best interests of the child where there is a change of circumstances since the entry of the judgment. (*Blanco* v. *Hernandez,* 32 P. R. R. 20; *Rodriguez* v. *Gerena,* 75 P. R. R. 845 [Feb. 8, 1954].) New York has similar power where the parents and the child are within this jurisdiction.

In our opinion, the evidence before Special Term was not of sufficient moment to justify a finding that there was a change of circumstances since the entry of the Puerto Rico judgment in July, 1953, to warrant any change therein with respect to the custody provisions entered on the mother's consent. When it is considered that Alberto was only five years and ten months old when he was brought to New York in November, 1954, that he had not seen his mother, brother, and sister for over a year, and that he had no knowledge of English, it is a credit to Alberto and to those who supervised his upbringing that within only two weeks he concededly became affectionate, respectful, and well-behaved, not only to his family, but to the children in the neighborhood.

The mother invoked the jurisdiction of the Puerto Rico court in January and February, 1955. When in March, 1955, that court directed her to bring Alberto to Puerto Rico, she disregarded the order. While the proceeding which she instituted there was still pending, she attempted to circumvent the jurisdiction of the Puerto Rico court by coming to New York. As a matter of comity, this court should not assist her to flout the orders of the Puerto Rico court, the jurisdiction of which she first invoked.

The stipulation of the parties of July 23, 1953, incorporated in the order establishing the family relations and in the judgment, provided that, if the paternal grandparents failed to take Alberto to New York each year to spend his vacation with his mother, the latter, in the exercise of her right of *patria potestas,* was given power to deprive the grandparents of his custody and to require the court to take whatever steps might be necessary to enforce compliance with the stipulation. The grant to the mother of the *patria potestas* over the three children was merely the grant of authority over their persons and property. (Bouvier's Law Dictionary [Rawle's 3d Rev.].) Special Term's finding that the paternal grandparents had failed to comply with the Puerto Rico judgment of July 23, 1953, is directly contrary to the finding by the Puerto Rico court, in its order of March 17, 1955, that the said grandparents had complied with the judgment. In any event, the right of

*patria potestas* did not give the mother the right unilaterally to change the custody provisions of the judgment.

The provisions of the judgment of July 23, 1953, with respect to custody are such that, when the two younger children are in New York, Alberto is to be in Puerto Rico, and when Alberto is in New York, the two younger children are to be in Puerto Rico. It is not for the New York courts to say that these provisions were not in the best interests of Alberto in view of the fact that the Puerto Rico court, when it incorporated that provision of the stipulation in its judgment, impliedly decided that they were. While it may be that hindsight has indicated to the mother that the three children should be together rather than separated, her agreement, incorporated in the judgment of the Puerto Rico court, was that the three children should not be together and that the grandparents should have custody of Alberto all year, with the exception of the vacation months. Neither the evidence before Special Term, which involved the conduct of Alberto in November, 1954, nor the mother's right of *patria potestas,* was sufficient in April, 1955, to justify any change in the judgment.

If there has been any change of circumstances since the entry of the order at Special Term in April, 1955, another proceeding may be instituted based on such change, either in New York or in Puerto Rico.

While, in our opinion, there should be reversal, our concern for the welfare of the child requires, however, that our order be conditional. If it shall be decided in the proceeding now pending in Puerto Rico that complete custody should be given to respondent, Alberto should not be required to rely on those who oppose that disposition, to return him to his mother's custody in New York. Appellants, apparently mindful of such a contingency, offered, before this proceeding was commenced, to make suitable provision for the traveling expenses of respondent, her parents, and an attorney of her choice, and for the payment of all legal expenses, if she would consent to return with Alberto to Puerto Rico. In the interests of the child, suitable provision should now be made so that respondent, or some other proper person designated by her, may accompany him to Puerto Rico and return him to New York, if it shall be decided that his welfare requires that he reside with his mother and his brother and sister. Counsel may stipulate, if they can agree, as to the terms and conditions to be imposed to effect this result, and their stipulation will be included in our order. If they shall be unable to agree, appropriate terms and conditions will be provided by this court.

The order, insofar as appealed from, should be reversed on the law and the facts, without costs, the writ should be sustained, and respondent should be directed to deliver the infant to appellant Moreno for delivery to the paternal grandparents. Findings of fact insofar as they may be inconsistent herewith should be reversed, and new findings should be made as indicated herein.

UGHETTA, J. (dissenting). The only valid, subsisting and final determination of the courts of Puerto Rico to which this court is required to give recognition is the original judgment of divorce of July 23, 1953. By this judgment, the court found the mother to be entitled to the *patria potestas* thus placing upon her the responsibility for the child's moral and physical welfare. At the same time, on her consent, it awarded temporary custody to the paternal grandparents.

She thereafter, pursuant to the authority which had been thus conferred upon her — if, indeed, any such authority was necessary — properly and for reasons which she deemed sufficient made application to the Puerto Rican court for a change of the temporary custody of the infant. The court in intermediate orders declined to consider the application until the child should be returned to Puerto Rico, which the mother declined to do. Thereupon, the instant proceeding was instituted by the father and an attorney representing the grandparents. The boy (aged six years) being presently a resident of this State, our courts may make a different award with respect to his custody if intervening and current circumstances have changed (*Ansorge* v. *Armour*, 267 N. Y. 492; *Matter of Young* v. *Roe*, 265 App. Div. 858, affd. 290 N. Y. 823), and this is true irrespective of the residence or domicile of the parents (*Finlay* v. *Finlay*, 240 N. Y. 429). As Judge CARDOZO eloquently pointed out at pages 433–434 of the case just cited, the Supreme Court, as successor to the prerogative of the chancellor, acts as *parens patriæ* to do what is best for the interest of the child. While everyone respects agreements voluntarily made, this situation does not present the aspects of the ordinary business contract. If, despite her agreement, the mother here finds that the child's welfare is not best served by its temporary custody by its grandparents, her duty in the exercise of the *patria potestas* is to remedy the situation. Parents can never finally contract with respect to the custody of their children. Over these the court has jurisdiction, regardless of the agreement of the parties. (*Matter of Hill* [*Hill*], 199 Misc. 1035; *Kunker* v. *Kunker*, 230 App. Div. 641.) In *People ex rel. Converse* v. *Derrick* (146 Misc. 73, 77–78) the power of the court is graphically

described as follows: " The State of New York stands in relation of *parens patriæ* to minor children in the State, and representing the State, it is the function of the Supreme Court to determine the custody of such minors, and such determination is to be based solely on the welfare of the minors. This power of the State and function of the Supreme Court evidently transcends legislative action and contract between individuals " (citing cases).

There is ample evidence in the record to sustain a finding that there was a change of circumstances since the entry of the Puerto Rican judgment. The mother and two disinterested witnesses testified as to the boy's behavior and attitude when he came to New York. The Special Term accordingly properly exercised its power as *parens patriæ,* seeking solely what was best for the infant, and awarded custody to the mother. As the majority opinion points out, contrasted with his behavior on his arrival here, the boy, after residing for but a short time with his mother, brother and sister, became affectionate, respectful and well-behaved. As is also pointed out by the majority, the three children of this broken marriage are to be kept separated unless the determination of the Special Term is affirmed. We do not apprehend how this court can say, in the face of the findings of the trier of the facts, that any such arrangement is in the best interests of the child, merely because the mother submitted herself to the jurisdiction of the Puerto Rican court in what we must, in the absence of proof to the contrary, believe to be an honest effort to exercise her *patria potestas* for the best interests of the boy. Special Term " was impressed with the dignity and courteous attitude of the respondent [mother]." As the Court of Appeals pointed out in reversing this court in *People ex rel. Herzog* v. *Morgan* (287 N. Y. 317, 322): " The foregoing is the substance of the case. Our examination of it has been made with some anxiety because of the nature of the issue. The Special Term judge saw and heard the witnesses. He was face to face with the infants whose paramount interests were to be fostered. The factors that made his duty clear to him can at this distance be seen by us only, as it were, through a glass darkly. Our conclusion is that in all human probability the first-made findings of the Special Term are attested by the weight of the evidence."

It must be borne in mind that, while the father of the infant was a petitioner for the writ of habeas corpus, this is not a proceeding to determine whether the custody of the infant should be given to the mother or to the father. The petition asks that the child be delivered to appellant Moreno, an attor-

ney, '' for the sole purpose of immediately delivering said infant to '' the paternal grandparents. The case is not, therefore, one where the court must determine whether the best interests of the child will be served by awarding custody to one parent or to the other, but whether such custody should be given to the mother or to relatives other than the father. In *People ex rel. Portnoy* v. *Strasser* (303 N. Y. 539, 542) Judge DESMOND, writing for a unanimous court, had the following to say:

'' Questions of custody are, generally, for the Supreme Court, in its discretion, and it is rarely that any such determination by it can raise any question of law for us. But that discretion is not an absolute or uncontrolled one (see *Bunim* v. *Bunim,* 298 N. Y. 391). No court can, for any but the gravest reasons, transfer a child from its natural parent to any other person (*People ex rel. Boulware* v. *Martens,* 232 App. Div. 258, affd. 258 N. Y. 534; *People ex rel. Hausler* v. *Stegmeier,* 240 App. Div. 901, affd. 264 N. Y. 483; *Matter of Thorne,* 240 N. Y. 444; Domestic Relations Law, § 81), since the right of a parent, under natural law, to establish a home and bring up children is a fundamental one and beyond the reach of any court (*Meyer* v. *Nebraska,* 262 U. S. 390, 399).

'' We do not have here one of those unhappily frequent cases where the contest is between parents and the courts must make the best available choice. Nor is this a case where a parent has left a child with relatives for a long time, then seeks it back (see *Matter of Benning* [*Nigro*], 303 N. Y. 775). Here a grandparent has assumed the very heavy burden of proving that a little girl should, by court order, be separated from her own and her mother's home. To sustain that burden, relator must do more than prevail on a simple factual issue as to which are the better surroundings, or as to which party is better equipped to raise the child. Quoting a famous case: ' The dilemma, it would seem, is this: Shall she be ignored as an outcast or recognized as a mother? If she is not to be ignored, if the child is still her child, her rights must be regarded: Her right as a parent, not as a married woman, to the care and custody of the child becomes superior to that of all others unless it should be shown anew by the child's relatives or custodians that she is an unfit person to exercise such guardianship ' (*Matter of Thorne, supra,* pp. 449–450 * * *)." See, to like effect, *People ex rel. Kropp* v. *Shepsky* (305 N. Y. 465, 468–469).

Simply because it may be felt that the mother's conduct with respect to litigation outside the State has not been all that

could be desired, this court should not disregard the findings of the Special Term, the best interests of the child, and the well-settled and clearly enunciated law of this State with respect to the custody of minors.

The order, insofar as appealed from, should be affirmed.

NOLAN, P. J., and MURPHY, J., concur with BELDOCK, J.; UGHETTA, J., dissents and votes to affirm the order, insofar as appealed from, in opinion, in which WENZEL, J., concurs.

Order, insofar as appealed from, reversed, on the law and the facts, without costs, writ sustained, and respondent directed to deliver the infant to appellant Moreno for delivery to the paternal grandparents. Findings of fact insofar as they may be inconsistent herewith are reversed and new findings are made as indicated herein. Settle order on notice.