The People of the State of New York ex rel. David N. Fields, Respondent, against Roland J. Kaufmann, Appellant.

First Department, December 15, 1959.

*Rothenberg, Atkins & Koss* (*Charles Rothenberg* of counsel), for appellant.

*David N. Fields,* respondent in person.

M. M. Frank, J. In this habeas corpus proceeding, Special Term granted the writ and awarded custody to Marion Groen (herein referred to as the petitioner), the mother of the two children involved. They are a daughter aged seven; and a son aged five, who, virtually since birth, has been under the care of the father (referred to herein as the defendant).

In September, 1953, shortly before the birth of the second child, the mother fell victim to paralytic poliomyelitis. She

achieved rehabilitation and, although not ambulatory, worked as a registered nurse. She is at present employed as a director of nursing and will shortly assume the directorship of a hospital in Philadelphia under a five-year contract.

In 1954, the petitioner informed her husband that she desired to terminate their relationship. In compliance with that request, the defendant obtained a divorce in Mexico, in which proceeding the petitioner appeared and was represented by counsel.

During the mother's struggle to regain her health, create a useful career and become self-supporting, the father reared the infants. In February, 1959, the father married a young woman theretofore employed to care for the children. This proceeding by the mother for custody was commenced at about the time of that marriage.

Both parents appeared and testified at the hearing on this writ, and the record is before us. In addition, we have examined the confidential report of the family counseling unit as well as the psychiatric, psychological, and social welfare reports.

There is no doubt that the learned Justice at Special Term, Part XII, who gave this matter serious and thoughtful consideration, was profoundly impressed with the success achieved by the petitioner in her efforts toward rehabilitation. The impression made upon him is evident from the record, and from his opinion in which he states that the mother " performed a miracle of self-rehabilitation " and that " great credit must be given her for her achievement." With his conclusions in that regard we unreservedly concur. However, while the petitioner's successful efforts toward rehabilitation are quite relevant to the issue as to which parent should be given custody of the infants, they are not controlling.

To fulfill the role of the State as *parens patriæ*, the Supreme Court has the obligation to guard the welfare of infants and has the duty to award custody to the parent who, under all the circumstances, can more adequately serve their best interests (see Domestic Relations Law, § 70). While both parents here appear to be worthy enough to be entrusted with the care of the children, we have grave doubts as to which is better qualified.

As stated, the reports submitted to the trial court are not a part of the record, and were not available to counsel for the parties. They contain many significant conclusions that were not explored on the trial. A determination would rest on a more solid foundation, if some of the facts and conclusions stated in the reports were developed, made a part of the record, and the parties given the opportunity to explore and air the issues in that respect.

Since the record is deficient in the manner indicated, we deem it advisable to order a new hearing. Our decision is not to be construed as a rejection of the mother as a suitable custodian, for if we could unequivocally conclude from the record which parent was better qualified, there would be no need for a new trial.

To what extent reports like the ones in this proceeding impinge upon the traditional procedure mandated by the adversary concept of our judicial system is still a subject of debate in many jurisdictions.* Although the basic requirement that proof may be received only in compliance with the rules of evidence ordinarily applies with equal force to habeas corpus proceedings, where the welfare of children is concerned and in furtherance of the duty of the State as *parens patriæ,* courts are not so hidebound or limited that they may not depart from strict adversary concepts. By analogy, it appears that so important is the duty of the State deemed to be in its role as *parens patriæ,* so vital is its concern for its infant wards, that from birth to maturity their welfare is paramount even when compared with the rights of the natural parents. Nor is this principle of recent origin. The power to award custody had its origin in the Chancellor, and the Supreme Court derived the power and the duty as his successor. State interest in and court obligation to the welfare of infants have been held by our Court of Appeals to transcend the rule of comity and the full faith and credit clause does not apply to custody decrees under some circumstances.**

While it is rarely possible to find a completely satisfactory solution when parents have sundered family unity, the paramount obligation of the courts is to provide such custody as, under the circumstances, will best protect and preserve the health, welfare, education, and well-being of the infant. To accomplish that purpose, courts will call to their aid the expert services of specialists trained in the social and medical sciences, and should not be deterred by such a narrow application of the rules of evidence as will deprive them of information of real value in attaining the goal sought.

* For a full discussion of the subject, see " Use of Extra-Record Information in Custody Cases ", The University of Chicago Law Review (Vol. 24 [1956], p. 349).

** *Matter of Bachman* v. *Mejias* (1 N Y 2d 575); but cf. *May* v. *Anderson* (345 U. S. 528); see, also, *Matter of Bock* [*Breitung*] (280 N. Y. 349); *Matter of Jewish Child Care Assn.* [*Sanders*] (5 N Y 2d 222), particularly with regard to the "best interest" test as applied here, see Judge DYE's dissenting opinion (pp. 231–232); New York University Law Review (Vol. 34, Nov. 1959, p. 1323) "Domestic Relations—Child Custody".

That reports of experts are incalculably beneficial as aids to the court in custody matters is no longer open to question. What must be borne in mind, however, is that they are only aids and, if not woven into the fabric of the record, should not form the base for the decision (see *People ex rel. Kessler* v. *Cotter,* 285 App. Div. 206).

To obviate objection to the use of reports dehors the record and to avoid a possible claim of error, some judges have adopted the practice of accepting express consents of the parties to such use. The record here does not disclose that the parties consented to the use of the reports in the manner indicated.

It is neither practical nor feasible to attempt to outline a standard course for hearings in these matters. We can only suggest that exploration of objective factors be made. In this case, for example, was there a failure to make regular inquiry as to the children's progress at school? If so, is there an adequate explanation? If there is none, what conclusion may properly be drawn? How frequently was inquiry made at home by visits or telephone as to the well-being of the infants? If inquiries were not frequent and regular, is there an explanation to excuse the failure? Do the remarriage of the respondent and his present wife's relationship with the children bear on this contest? If they do, to what extent? Does the father's engrossment in his business affairs affect the measure of attention and care which the children require? These are mere samplings of many issues which lend themselves to inquiry. We express no opinion as to the significance of or the effect to be given to the written agreement executed by the parties concerning the custody of the children. That, too, is an issue which should be fully examined by the trial court.

In *Gluckstern* v. *Gluckstern*\* Mr. Justice STREIT employed a method which appears to be neither unsuitable nor objectionable. As in *Gluckstern,* it is quite appropriate for the trial court to direct lines of inquiry from information supplied in confidential reports, without the necessity of placing the reporter on the witness stand or making the reports a part of the record. Thus the contents may provide the source for the examination of the parties and witnesses by the court and enable counsel to fully dissect any disputed facts. If it is deemed necessary or helpful, the reports heretofore submitted may be re-evaluated or new or additional reports, psychiatric examinations, and other available aids may be ordered. In sum, a reappraisal of the

---

\* 17 Misc 2d 83, affd. 3 A D 2d 999, affd. 4 N Y 2d 521. No issue was raised on appeal as to the manner in which reports were used by the court at Special Term.

parents, the children, and the surrounding circumstances appears to be desirable.

The order should be reversed, in the exercise of discretion, without costs, and the matter remanded to Special Term for a new hearing.

BOTEIN, P. J., BREITEL, VALENTE and STEVENS, JJ., concur.

Order unanimously reversed, in the exercise of discretion, without costs, and the matter remanded to Special Term for a new hearing.