Arthur Markswich, J.
In the Summer of 1955 rule VIII-a of the Special Term Rules (New York County, Supreme Court) was promulgated by which this part was set up to deal with matrimonial matters. Many well-intentioned persons have been moved in varying degrees to express the hope that this court has been transmuted by this single step into an effective agency for the preservation and strengthening of the institution of marriage. Some — many, unfortunately, unequipped with facts — have waxed almost lyrical on this subject in the press and elsewhere. Would that it were so. Although this has certainly been a move in the right direction, no problems have been solved, nor will they be, as this case partially illustrates, until the enactment of adequate and enlightened legislation which will set up adequate and enlightened procedures. In an endeavor to further the usefulness of Part XII for the various purposes for which it was established, inclusive of questions of custody of infants, the Association of the Bar’s Special Committee ad hoc, using private funds, has provided, for the time being, a family counselor, highly trained in terms of social work, education and experience, and superbly qualified to render such services as might be required by the court. It should be almost axiomatic that the professional opinion of such a person would be of the highest value in determining what terms and conditions of custody of an infant would serve the best interests of the infant. This by contrast with the classic method in which a court, sometimes through an official referee attempts to act as an expert on the subject. Although at all times operated by judges and referees of integrity and ability, this machinery has nevertheless on occasion subjected children to procedures which no child psychologist would view with favor, and has often appeared to arrive at conclusions based on wishful thinking buttressed by inspirational admonitions. This leaves much to be desired. Various other jurisdictions, some regarded by us as backward, have coped with the problem, and other so-called “lower ” courts are better equipped in the form of auxiliary services than this Supreme Court. Much has been said and written about our needs in this field. (E.g., see, 1956 Report, *596 Temporary Commission on the Courts, particularly pp. 44, 52-53, 57; N. Y. Legis. Doc., 1956, No. 18.) There is wide agreement as to the existence of such needs, if not how to supply them, even by those who feel that the use of such services might impair the judicial function. Our system is oriented more toward hindsight than foresight. It is difficult to defend our great use of social workers in the character of probation officers, who function only after people have gone astray, as against our failure to utilize their services to prevent broken homes and the consequent emotional dislocation of children. This court is justly proud of the success of our Medical Expert Testimony project, reflected in the recent report rendered by the Special Committee therefor of the Association of the Bar. The report bears quoting: “ Even the most learned of our judges cannot be expected to be technical experts in all of the specialties of medicine or, indeed, other fields of science, any more than skilled physicians who may have had considerable experience in medicolegal matters can be considered to be experts in the technical phases of the law. (“ Impartial Medical Testimony,” 1956, p. 44.) If this Special Term, Part XII is to justify the hopes of those who envisioned it, progress must start with the realization that the marriage relation in all its aspects is such a “ field of science.”
Under present statutes and rules, this court may not, unless by consent of the parties, refer a custody question to our one expert social worker. Happily, however, many parties and attorneys in such proceedings have so consented.
In this proceeding, petitioner has asked for sole and exclusive custody of her three children, who are uoav in the custody of their father, with certain visitation rights in the mother. As the situation is found, such periods of visitation seem to be fair and proper, taking into account as they do respondent’s residence in New York, where the children attend school, and petitioner’s residence in Connecticut with her present husband. In February, 1953, the present arrangement was fixed by an order of this court, which formalized an agreement reached by the parties, after litigation, in the previous December. The effect of the relief here sought would be to uproot the children from the surroundings in which they live and move them to another atmosphere which, though familiar as a part-time home, represents a distinct change. For obvious reasons, such a disturbance is not to be visited lightly upon the children. When the motion came before the court, it fairly cried out for study and recommendation by our family counselor. This was par *597 ticularly so, since the papers disclosed that there had been various contributions to the insecurity of these children, such as, for instance, interviews as to their desires. Counsel for the mother consented to the suggested procedure; counsel for the father did not, but insisted that only formal proceedings take place. This is particularly unfortunate for, even though I do not reach the question, I am persuaded in my own relatively “ nonprofessional ” view (and thereby somewhat comforted) that the father would have been sustained by our expert and that her recommendation would have been against any change being made in the conditions of custody. If this decision happens to be in the best interests of the children it is so only because of the fact that, by coincidence, such interests happen best to be served by the agreement reached by counsel in 1952 and accepted by this court in 1953; the only issue I have decided here is whether petitioner has presented enough to the court to compel an inquiry, by way of a hearing, into the situation.
Because of the result reached herein, there are cursorily passed over several points argued in the memoranda. To begin with, this proceeding is a proper one in form, and this court has jurisdiction. The agreement of 1952 and order of 1953, above referred to, are not res judicata in the sense that they stand for all time as a bar between the petitioner and respondent to a reopening of the subject, for the best interests and welfare of the children are paramount considerations.
The effect of the law, however, is to make the last disposition res judicata where nothing has intervened since to change substantially the circumstances which existed when that decision was arrived at. An application such as this must have some basis for consideration before the court will order a hearing and thereby put the respondent to the trouble and expense of appearing thereat and defending. Before the status quo may be so examined, it must be determined that there has been such a change in the surrounding circumstances since the last disposition as would justify a change in the custody conditions. (Lester v. Lester, 178 App. Div. 205, affd. 222 N. Y. 546; Matter of Finston, 275 App. Div. 928; People ex rel. Hahn v. Haines, 1 A D 2d 263 and cases therein cited, particularly People ex rel. Glendening v. Glendening, 259 App. Div. 384 and Matter of Brock, 245 App. Div. 5.)
It does not appear that such a showing has been made here. There is no prima facie presentation either of unfitness of respondent or of harm or imminent harm to the children. The petition is replete with expressions of disagreement, dissatis *598 faction and complaint, but, as at the end of a plaintiff’s case, giving the benefit of doubt to petitioner and drawing only favorable inferences, if it were to be assumed that petitioner could prove substantially at a hearing the allegations in the papers, they would fall short of establishing that ‘ ‘ there has been * * * some very decided and substantial change or changes which warrant the transfer of the general custody of the [children] ” (Lester v. Lester, 178 App. Div. 205, 214, supra).
The motion is in all respects denied.
Settle order.