Domenick L. Gabrielli, J.
On April 20, 1951 the Supreme Court in Monroe County granted the respondent mother a decree of divorce; and the father was directed to pay the mother the sum of $35 per week for her support and maintenance, and an additional sum of $40 per week for the care and support of the four children of the marriage, to wit: Stephen C. Alaimo, then 11; Diane M. Alaimo, then 8; Raymond J. Alaimo, then 2; and Kenneth T. Alaimo, then 1 year old.
In August of 1954, the mother and father were remarried and the family once again became united.
Thereafter and on January 16,1956, the mother was granted a decree of annulment in the Supreme Court of Monroe County. By the terms of this decree, the custody of Stephen Alaimo, then 16 years of age and attending his final year of high school, remained with the father. The custody of Diane, then 12; Raymond, 7; and Kenneth, 6, was granted to the mother who returned to her former home in Omaha, Nebraska, with these three children. The father was directed to pay the sum of $20 per week for the support of each of these children, while with the mother. The decree further provided, among other things, that these three children would be with the father in the Summer vacation months and at other specified times.
During the recent Summer vacation period the three children made their annual visit to Rochester and shortly before the two boys, Raymond and Kenneth, were to return to their mother, and by petition verified the 2nd day of August, 1962, the present proceeding to change the custody of the two named boys, was commenced.
*760 This proceeding was begun by an order to show cause dated August 2, 1962 based upon the petition of the 14-year-old boy Raymond Alaimo, and there was also filed with these papers the affidavit of the father who desires the custody change; and the affidavit of their attorney.
The application is made on behalf of both Raymond Alaimo and the other son, Kenneth Alaimo, now 13 years of age.
This proceeding, brought for the purpose of a modification of the decree of annulment granted on January 16, 1954 seeks to remove the custody of these two boys from their mother and have the custody placed in the father. The prayer for relief does not request any change in the custody of the daughter, Diane.
An examination of the papers in support of this application shows that it is a proceeding for the modification of the 1956 decree of annulment and that the present proceeding is brought by the son Raymond Alaimo on his own behalf and in behalf of his younger brother Kenneth Alaimo. The petition is made by the son, Raymond. The petition and order to show cause is entitled, ‘ ‘ In The Matter Of The Petition Of Raymond Alaimo, An Infant Over 14 Yrs. Of Age. For An Order Granting Custody Of Himself And His Brother, Kenneth Alaimo, To His Father, Stephen L. Alaimo ”.
This is not a habeas corpus proceeding. This is purely and simply an application to modify the terms and provisions of a decree of annulment. The order to show cause directs the respondent mother to show cause “ why an order should not be made varying and modifying the said judgment of annulment by awarding custody of Raymond Alaimo and Kenneth Alaimo to their father ’ ’.
It has long been recognized in numerous cases that the jurisdiction of the courts of this State in matrimonial actions is limited to such powers as are expressly conferred upon them by statute. (Langerman v. Langerman, 303 N. Y. 465; Caldwell v. Caldwell, 298 N. Y. 146; Ackerman v. Ackerman, 200 N. Y. 72; Walker v. Walker, 155 N. Y. 77; Griffin v. Griffin, 47 N. Y. 134.)
This court has no inherent authority to modify its final judgment in this action. Any right it has to do so must be given it by the Legislature. (Kamp v. Kamp, 59 N. Y. 212; Osterhout v. Osterhout, 184 Misc. 911; Goodsell v. Goodsell, 82 App. Div. 65; Rice v. Andrews, 127 Misc. 826.)
Section 1140 of the Civil Practice Act, insofar as it is applicable to this matter provides as follows: “If a marriage be declared a nullity or annulled, the court, by a judgment or by *761 subsequent order or by one or more orders made from time to time before final judgment, must give some direction for the custody and care of any child of the marriage, and for the education and maintenance of any child of the marriage, as justice requires. The court by order upon the application of either party to the marriage, or any other person or party having the care, ciistody and control of the child pursuant to said final judgment or order, after due notice to the other, to be given in such manner as the court shall prescribe, at any time after final judgment, may annul, vary or modify such directions, or in case no such direction or directions shall have been made, in a judgment hereafter given, may amend such final judgment by inserting such direction or directions therein (Italics supplied.)
There appears to be no authority for the commencement of the present application by the son, Raymond. Nowhere in the statute (Civ. Prac. Act, § 1140 is there any grant of authority allowing this type of proceeding brought by anyone except ‘ ‘ upon the application of either party to the marriage, or any other person or party having the care, custody and control of the child pursuant to said final judgment or order”. It is thus apparent that this court is without jurisdiction to entertain the application in its present form, and it should and will, therefore, be denied, for want of such authority.
Let us, however, assume that this proceeding had been brought by the father, or, that the papers used upon this application could be construed or interpreted as being in the nature of an application actually made by him.
Involving as they do the highly important and sacred relations of the home and family, as well as the future well-being and welfare of children, it is difficult to conceive of matters or proceedings that can come before the court at Special Term, of any greater importance than the custody of infant children. There is constantly before the courts, cases having the potentials of heavy monetary liability, but the intimate relations of the family unit and particularly the future of young people of tender years, is of such importance to society and the State, that such cases transcend in relative importance any that deal with the daily vagaries of contracts, negligence and litigation involving mere dollars.
To paraphrase the language of Judge Cardozo in Finlay v. Finlay (240 N. Y. 429, 433-434), the court acts as parens patriae to do what is best for the interest of a child and puts itself in the position of a “wise, affectionate and careful parent”. The court does not determine “ rights ” as between a parent and *762 child or as between parents. It merely interferes for the protection and benefit of children by virtue of the prerogative which belongs to the State and the responsibility which is placed upon the court.
It is axiomatic that in cases of this kind, the court must be mindful not only of the capabilities of either of the parents to properly discharge their duties, but more important, the determination should be predicated upon what is best for the interests of the child or children. In considering this, the court, among other things, must have in mind the entire background, the performances of both parents in the upbringing of the children during their tender years, the psychological forces which the children must combat and what ought best be done to insure their best for the future.
In modifying a judgment or order with respect to the custody of minor children, the sole determining factor is what is best for their welfare. (Burns v. Burns, 264 App. Div. 894.)
Any problem of this nature and magnitude should be approached as one involving highly sensitive human relationships, rather than along formal legalistic lines alone.
The oft-stated principle that “ The supreme issue here is the welfare of the children (People ex rel. Spreckles v. De Ruyter, 150 Misc. 323.) ” needs no repetition here. It is patent that basically it is this consideration that should, in the main, govern the court’s concern in all cases involving the custody of children. (People ex rel. Geismar v. Geismar, 184 Misc. 897, 899.)
The Fourth Department in Housman v. Housman (285 App. Div. 1012), took the position that a change of custody provisions would be improper without a showing of change in circumstances or conditions in a case where an annulment decree was modified in 1947 relative to custody provisions and where a further modification was sought in 1953. (See, also, Matter of Jackson v. Woodner, 19 Misc 2d 594.)
In the case before us, what changes have occurred since the custody provision was made in 1956? What has taken place in the lives of the children that would move this court to deprive the mother of custody of these two boys? These are but a few of the questions involved.
The mother, 45 years of age, resides in Omaha, Nebraska, and has since the annulment of the parties. She is engaged as a certified dental assistant by her brother, Dr. George Shada. She receives a salary of $500 per month plus certain bonuses, and is purchasing a home on a land contract. Her seven-room house consists of the usual conveniences and has three bedrooms *763 on the second floor, one on the first floor and one in the basement. It is situated in a pleasant and respectable neighborhood. Her parents and brother live across the street from her.
Although, the papers and affidavits submitted upon the argument of the motion made some reference to the neighborhood, not the slightest evidence was produced at the hearing to indicate that this was not a wholesome, pleasant and proper neighborhood.
In fact, no issue whatsoever, was created relative to this phase of the matter and the court was impressed with the fact that neither the father, nor anyone in fact, made any assertions or claims that the mother was not properly raising the children. She has given them excellent training, has taught them good manners, proper behavior, and they give every appearance of fine young gentlemen. It was most apparent that this mother has been, with the limitations imposed by a dissolution of her marriage, performing her maternal duties in an exemplary fashion and that these boys and the daughter Diane are well cared for, protected and have received the maternal love, attention and direction that is too often irreplaceable. Through the efforts and sincere co-operation of her brother and parents, the void created by a lack of a father in the home, is being filled. The boys have both expressed admiration and affection for their uncle and grandparents.
Sometime after the annulment, the father remarried; and since then has adopted two children, now three and four years of age respectively. There is no question regarding the sincerity and ability of the father to well provide for these boys. The mother has not remarried and states that she is content to devote her life to the upbringing of her children.
It might be well to here point out that both of these boys have very frankly and candidly expressed a sincere love for both their parents and that they love both of them equally.
During the time the boys have been living with the mother in Omaha, they have been in regular attendance at church and Sunday school. They state that since September of this year they have been doing likewise while with the father. Although this may be of no particular moment, there appears to be a discrepancy between the church they state they attend and the one mentioned by the father in his affidavit.
The father is a successful doctor in Rochester and bears an excellent reputation. As testified by the witnesses, it is apparent that he has been able to provide himself with a fine home, a Summer cottage on Canandaigua Lake and appears to have interesting hobbies in which the boys are both vitally interested. *764 During the Summer vacation periods when the boys are with him, he, likewise, has been well and capably discharging his obligations as a father, extending and giving to them opportunities not always available to all boys. The court hastens to add that, like the mother, no one has made any charges or complaints as to the manner in which the boys have been treated or cared for during their vacation stays with the father.
The father, although present in court during the proceeding and despite the fact he filed an affidavit, did not take the witness stand. The evidence produced on behalf of the petition consisted solely of the testimony of the two boys involved, who among other things, expressed a preference to be with the father. When queried as to the reasons for this preference, they readily admitted that they could have 1 ‘ more fun here ’ ’ with the opportunities available to them and they ‘ ‘ felt ” that greater opportunities were available to them.
The court is well aware that expressions of a child may and ought to be considered, in determining to whom to award custody, but these expressions of preference should not be given disproportionate weight or meaning. (Matter of Norman, 26 Misc 2d 700, 704.)
Research of the law and reported cases does not disclose one single situation where the custody of a child has been taken from a parent who has given him, for so many years, the care and splendid training this mother has, in order to turn him over to the other parent in circumstances similar to those disclosed herein, merely because the child desires it. (People ex rel. Glendening v. Glendening, 259 App. Div. 384.) “ To rule otherwise is to disregard the established facts, practically to abandon the jurisdiction of the court and make a boy of sixteen the sole judge of his own moral, intellectual and spiritual welfare ’ ’ (People ex rel. Glendening v. Glendening, supra, p. 392).
The mother has, with the exception of the times of certain vacation periods, had the care and custody of these boys from the time of the divorce in 1951. From the evidence produced at the hearing, she has assumed and discharged the responsibility of a parent and mother in admirable fashion at all times. Ordinarily it would seem harsh and cruel to leave the custody in the status quo in the face of the pronounced preference of the two boys. But they were content to be with her before this litigation and I am persuaded that they will be happy with the mother. To allow an expression of preference to prevail, would be tantamount to substituting their choice for the judgment of the court. (See People ex rel. Geismar v. Geismar, 184 Misc. 897, supra.)
*765 The court has not overlooked the financial status of the father and his proven ability to provide the luxuries of life. These, however, cannot be solely persuasive of the rights of these children. All factors must be carefully weighed. It has been held that where a father’s fortune might be large, or likely to become such, or that he could afford to provide a child with expensive aids to education, artistic as well as substantial, and social opportunities much beyond what the mother’s environment in a comparatively small city could furnish, were not sufficient reasons for changing custody and depriving the mother of such child’s custody. (Lester v. Lester, 178 App. Div. 205, affd. 222 N. Y. 546.)
In the solution of this problem of custody, the interests of the children must be the paramount consideration, entwined, however, with the natural right of the parent where it has not been forfeited by any misconduct on the part of the custodial parent, and it may be that the interests of the children in a broad sense embrace the due observance of such right, and, therefore, is an important factor in determining such question. (Lester v. Lester, supra.)
The custody of infant children is not to be shifted from parent to parent merely because the noncustodial parent has experienced an improvement in condition or status. At least this is true so long as the custodial parent has not been shown to be unfit to continue to serve as the proper custodian. “ Thus, generally, the custody of children is to be established, whenever possible, on a long-term basis. Custody is not to be shuttled back and forth between divorced parents merely because of changes in their marital status, economic circumstances, or improvements in their moral or psychological adjustment.” (Matter of Lang v. Lang, 9 A D 2d 401, 409.)
The mother has, upon her own, made the necessary financial and other arrangements for the future college education of these boys. She is presently paying for the college education of the daughter, Diane, for whose support the father has been and is paying the sum of $20 per week, according to the decree of annulment.
Not possessing omnipotent or clairvoyant powers, the court can do only what it deems the facts warrant and dictate should be done. The court has given long, deep and careful consideration to this highly important matter.
In the moving papers, reference was made to some reluctance on the part of these boys to return to Omaha. The testimony, however, impressed the court that these boys have been taught a respect for authority and, more important, that the father had *766 quite properly instructed them that they should obey whatever order the court made. While the statement of the children in the moving papers may have been motivated by youthful impatience and their understandable affection for their father as well as the niceties of life, I take this occasion to suggest that they again be admonished as to the necessity for compliance with the orders of this court and of the possible consequences resulting from any display of disobedience thereto.
Assuming that this application is considered as one being made by the father for a change of custody, my conclusion on the entire case is that the custody of both of these children should remain with the mother, with the generous visitation rights already provided for in the decree of annulment. This conclusion is in no way to be considered as any reflection on the father. I am persuaded that the interests of these children will be best served by this disposition. 11 [W]ith exceedingly rare exceptions there is no substitute for maternal attachment; no replacement for the fealty lavished by a mother. ’ ' (People ex rel. Spreckels v. De Ruyter, 150 Misc. 323, 324.)
An application for counsel fees and expenses has been made by the attorney for respondent. It is regretted that it became necessary for her and a witness to travel from Omaha, Nebraska, in order to defend her position, In view of the fact, however, that the court has viewed the application as one being made by the infant son, I do not feel that this court has any authority to grant such an application,