Morrie Slifkin, J.
These are two paternity proceedings affecting the two children of the parties, the hearing upon which has been consolidated for the purposes of this decision.
The respondent, Donald Eusso, has admitted paternity of both of the children, and an order of filiation is directed to be entered.
The respondent, however, has filed an application with the court wherein he requests that an order should be entered herein directing that custody of the two children of the parties be awarded to him as their putative father.
In custody proceedings concerning a child born in wedlock, the courts of this State have repeatedly stated that the concern of the court in its status as the guardian of all infants, and by virtue of its paternal jurisdiction is concerned solely with what is deemed for the best interest and welfare of the infant. (Finlay v. Finlay, 240 N. Y. 429; Matter of Lee, 220 N. Y. 532; Matter of Bock [Breitung], 280 N. Y. 349.) This judicial mandate is reflected in the language of section 70 of the Domestic Eelations Law relating to habeas corpus proceedings, which reads in part as follows: “ In all cases there shall be no prima facie right to the custody of the child in either parent, but the court shall determine solely what is for the best interest of the child, and what will best promote its welfare and happiness, and make award accordingly.”
In questions of custody relating to the child born out of wedlock, the courts of this State have enunciated the rule that the natural mother is prima facie entitled to the custody of such *67 child, subject, however, to the circumstance that if she be proved an unfit person, then custody may be awarded to the putative father or to some other person. (People ex rel. Meredith v. Meredith, 272 App. Div. 79, affd. 297 N. Y. 692; People ex rel. Kessler v. Wehnert, 114 N. Y. S. 2d 598; People ex rel. Lewisohn v. Spear, 174 Misc. 178.)
This rule relating to the child born out of wedlock and the disqualification of the natural mother is succinctly stated in Matter of Anonymous (12 Misc 2d 211, 213) in the following language: “ It is only where it appears from the evidence before the court that the mother is not a proper or suitable person to have custody over said infant, that the court will interfere with such right to custody and will direct the child to be placed elsewhere.”
The testimony in the instant proceeding includes by stipulation testimony taken before this court in a previous neglect proceeding filed by the putative father which was dismissed for reasons not relevant to this determination. The evidence establishes that the natural mother at the age of 13 bore an out-of wedlock child in Puerto Rico, came to this country and shortly before the beginning of her relationship with the present putative father, had an out-of-wedlock child in the State of New Jersey, then entered into a de facto relationship with the present putative father and bore him the two children whose custody is being sought in this proceeding and then entered into a marriage relationship with her present husband by whom at the time of trial she was carrying a child. Admittedly, sexual relations out of wedlock would not of themselves serve to disqualify the natural mother from custody. More importantly, however, instinct through the evidence is a pattern of behavior which indicates on the part of the natural mother a failure to possess or observe those normal and natural instincts which are customarily classified as “ mother love.”
The court, faced with a factual situation close to the instant case in Matter of Norman (26 Misc 2d 700) determined that a putative father would be entitled to keep custody of the child born out of wedlock against the claim of the natural mother. As in this case, there was a period of abandonment or at least of small concern on the part of the natural mother which resulted in action on the part of the mother only after she entered into a legal relationship with another man.
From the foregoing, the court might justifiably determine that by reason of temperament and behavior the natural mother in this case may be deemed not to be a proper person to have custody of these children, and in reaching this determination *68 the court has not overlooked the recent change of residence by the mother in order to provide additional living space for the children, nor the willingness and ability of her present husband to support these children.
It further appears to the court, however, that the distinction between legitimate and illegitimate children insofar as the latter, in matters of custody, carries with it the presumption of custody in favor of the natural mother, should be reconsidered and abolished in the Family Court. It is submitted that the proper standard is that which is enumerated in section 70 of the Domestic Eelations Law hereinabove quoted regardless of the manner of birth of the child involved. This court should be granted the same privileges and powers in determining the custody of a child born out of wedlock as between the putative father and the natural mother as exist in the case of legitimate children. The harsh view of the common law that a natural child is nobody’s child no longer prevails. To continue the presumption of custody in favor of the natural mother is in a sense a continuation of a stigma which attaches to an illegitimate child. This is patently unfair both to the child and to the Family Court. The Family Court should have the power, both as to the illegitimate as well as the legitimate child, only the duty to seek a determination required for the welfare and best interest of the child.
Particularly is this true, when it is considered that the Family Court is a unique socio-legal instrument provided with special facilities and powers to make such a disposition. This was the advantage contemplated between the creators of the Family Court Act. It permits the court through the use of a report from the Department of Probation and other related facilities a deep insight into the needs of the child as well as the relative financial, social and emotional abilities of the respective parties seeking custody. The use of such a report is expressly authorized under the provisions of section 653 of the Family Court Act, rule 6C.1 of the Eules of the Family Court, and by the Court of Appeals of this State (Kessler v. Kessler, 10 N Y 2d 445).
In this case, the court has requested and has been furnished with a detailed report concerning each of the parties to this proceeding, their environmental, social and economic background. The court has used this report, and based upon the testimony furnished and the recommendations of that report, f.Tns court finds that the interests and welfare of the children of this proceeding would best be served by placing their custody with the putative father.
*69 The court is mindful of the present interest and concern of the natural mother, and directs that counsel for the respective parties confer with the court to agree upon a mutually satisfactory visitation pattern. In the event that such an arrange- , ment cannot be reached by mutual agreement, then the matter will be restored to the calendar for appropriate determination by the court on this point.