Hugh R. Elwyn, J.
By writ of habeas corpus referred to this court by the Supreme Court, the petitioner seeks the custody of his daughter Beth Lynne, age 7, who is now residing with her mother, the respondent herein.
Beth Lynne is an illegitimate child born to the parties as the result of an illicit relationship which began approximately two years before the child’s birth on September 11, 1960 and continued with but two interruptions until the respondent left the petitioner’s home and place of business sometime in January of 1967. At first the parties lived together in an apartment in the City of Kingston, but in 1960 the petitioner purchased a bar and restaurant known as Rolling Acres in G-lenford, New York to which the parties then removed and where they continued to reside as husband and wife until their final separation in April, 1967. Although, after the petitioner’s divorce there was no legal impediment to a marriage, the parties never married. They nevertheless held themselves out to certain members of the community as husband and wife.
Twice during the period of their relationship the mother left the Rolling Acres Bar and Restaurant each time taking the child with her- — -the first time being for three months in the year 1962 when the respondent resided in Poughkeepsie and the second time in the year 1965 when, from February to December she resided somewhere in New Jersey. After each absence, however, the respondent returned with her child to Rolling Acres where she resumed her relationship with the petitioner and continued to work as a barmaid and waitress without compensation except for food and lodging.
During the year 1966 the child Beth Lynne attended kindergarten at the West Hurley School in the Onteora Central School District and continued to reside with her father at Rolling Acres even after her mother left permanently in April of 1967. [1] On or about May 17th the mother removed the child from the Rolling Acres establishment and since then the child and her mother have been residing at the home of the respondent’s aunt in the City of Kingston where they occupy a seven-room home with the aunt and uncle as the only other occupants.
*734 A great deal of the testimony adduced in this case consists of a descriptive word picture of the Rolling Acres Bar and Restaurant and of Beth Lynne’s daily life there while under the joint custody and control of both parents and subsequent to the mother’s departure. The petitioner, apparently aware of the vulnerability of a bar and restaurant as a suitable environment for the rearing of a young child, was at considerable pains to portray the Rolling Acres Bar and Restaurant as a quiet, respectable establishment with separate living quarters for Beth Lynne and her mother and the bar as a place from which Beth Lynne was carefully shielded. Moreover, even after the mother’s departure sometime in the Winter or early Spring the petitioner made great and sincere efforts to see to it that Beth Lynne attended school regularly and that her life rolled serenely on undisturbed by the temporary absence of her mother. The court has no doubt at all that the petitioner sincerely loves his daughter, that he is genuinely concerned for her welfare and that if given the opportunity is quite capable of providing an adequate home for his daughter. However, even conceding all this to the petitioner, such a concession does not resolve the issue in this case.
While the welfare of the child is the paramount and indeed the only proper consideration for the determination of the custody of a child whether legitimate or illegitimate (People ex rel. Meredith v. Meredith, 272 App. Div. 79, 82, affd. 297 N. Y. 692; People ex rel. Mahoff v. Matsoui, 139 Misc. 21, 24), nevertheless, in the case of an illegitimate child the rules for making that determination are different than in the case of a legitimate child.
In the case of the legitimate child there-is no prima facie right to the custody of the child in either parent (Domestic Relations Law, §§ 70, 240) ,[2] However, in the case of an illegitimate child, the mother of the child is in a favored position.
The rule applicable to the custody of an illegitimate child is that expressed by the Appellate Division in People ex rel. Meredith v. Meredith (supra). There it is stated (p. 82):
1 ‘ The rule is that the mother has the right to the custody of an illegitimate child as against the father, though the father has the right to the custody as against a stranger. (2 Kent’s Comm. [14th ed.], 317; Matter of Doyle, 1 Clarke Ch. 154; People *735 ex. rel. Trainer v. Cooper, 8 How. Pr. 288, 293.) The very statement of the rule shows that, under certain circumstances, the father has a right to the custody of his illegitimate child. Where, as in the case at bar, it appears that the mother is not a proper and suitable person the court, in behalf of the child, will interfere with the mother’s custody of an illegitimate child and direct that it be placed elsewhere. (Robalina v. Armstrong, 15 Barb. 247; People v. Landt, 2 Johns, 375.) The proper statement of the rule is that the mother of an illegitimate child is prima facie entitled to its custody and, when she is a proper and suitable person, the court will award its custody to her as against the father or anyone else. (10 Carmody on New York Pleading and Practice, § 45, and cases cited.) ” [3]
In accordance with this rule and the exercise of discretion, the courts have not hesitated to award the custody of an illegitimate child to its father to the exclusion of the mother where the mother was shown to be unfit and the court was satisfied that the welfare of the child required such a determination. (See, e. g., People ex rel. “ Franeois ” v. “ Ivanova ”, 14 A D 2d 317 [visitation]; People ex rel. Kessler v. Wehnert, 114 N. Y. S. 2d 598; People ex rel. MaHoff v. Matsoui, 139 Misc. 21, supra [divided custody] ; People ex rel. Lewisohn v. Spear, 174 Misc. 178; Matter of Anonymous, 12 Misc 2d 211 [visitation]; Matter of Norman, 26 Misc 2d 700; Matter of Godinez v. Russo, 49 Misc 2d 66.) However, in each case where exclusive custody was awarded to the father, the mother was found to be an unfit or unsuitable custodian and where divided custody was awarded or visitation granted to the father the arrangement was found not to be detrimental to the child’s welfare.
In this ease, to rebut the mother’s prima facie entitlement to the custody of her illegitimate child the petitioner sought to demonstrate her unfitness by his own testimony that (a) in the year 1962 the respondent left the Bolling Acres Bar and Restaurant taking the child with her and lived in Poughkeepsie for about six weeks; (b) in the year 1965 the respondent left the Rolling Acres Bar and Restaurant taking the child with her and lived in New Jersey for approximately seven months; (c) one *736 night in February, 1964 at about 12:30 a.m. he found the child crying in the back seat of a car which was parked in the parking lot of the Retreat Restaurant while the mother was inside at the bar; (d) on another occasion in the Fall of 1966 at about 11:30, 12:00 o ’clock at night he found the respondent and child at the T. P. Restaurant and Bar; (e) on still another occasion about three years ago when the respondent and child had been missing from home for about a day and a half the respondent and child were reported to have been at Armstrong’s Bar and Restaurant; and (f) that the respondent frequently came home in an intoxicated condition. No proof other than the petitioner’s testimony was offered in support of these charges.
Although the petitioner appears to have been displeased and much concerned by the respondent’s and his daughter’s absence from his- home during their sojourn in Poughkeepsie for about six weeks in 1962 and in New Jersey for about seven months in 1965, these two events are without any particular significance except to demonstrate the instability of the parties’ relationship, for there is no proof whatever that during these periods of time the child was in any way neglected by her mother or that the child suffered any ill effects from the change of environment.
The mother, of course, has her own explanation for her presence with the child at the T. P. Bar, which is that she stopped there with her brother and was there not more than a half hour. She also admits that on one occasion she left the child unattended for approximately 15 to 20 minutes in a parked car while she went into the Retreat Restaurant to await the preparation of some food she had ordered. However, aside from the propriety of bringing a child into a barroom at a late hour of the night and the temporary inattention of her mother while left alone in the parked car, there is nothing to suggest that the child suffered any harm as the result of either incident. The petitioner’s contention that the respondent frequently returned home in an intoxicated condition is emphatically denied by the respondent.
The petitioner’s catalogue of the respondent’s misconduct and improprieties which were offered to demonstrate the mother’s unfitness to have the custody of her daughter and the respondent’s explanations or denials thereof have been carefully weighed by the court in an effort to evaluate their gravity and their effect on a mother’s right to have the custody of her illegitimate child. While I am not so naive as to discredit the charges in their entirety, neither am I convinced that the mother’s faults and shortcomings taken as a Avhole add up to such moral laxity *737 or unconcern for her daughter’s welfare that the court should deprive her of her daughter’s custody.
Beth Lynne is only 7 years of age. The propriety of an award of custody of a young child to its mother was recognized in Ullman v. Ullman (151 App. Div. 419) where the court said (p. 424): “ The mother may have been at fault and the father blameless, and yet the age or condition of the child may require a mother’s care. * * * The child at tender age is entitled to have such care, love and discipline as only a good and devoted mother can usually give. ’ ’
Since the petitioner has failed to demonstrate to my satisfaction that the respondent is not a proper or suitable person to have the custody of her illegitimate daughter, under the rule of the Meredith case (supra), which, in spite of criticism (see Matter of Godinez v. Russo, 49 Misc 2d 66, 68, supra) appears still to be the law, the child’s custody should be awarded to the mother as against the father.
However, in a child custody case where the future of a child is at stake the determination of which parent should be awarded custody ought not to rest upon a failure of proof, or even solely upon the proof adduced if the proof is in any way unsatisfactory or deemed to be unreliable, for experience has shown that the mutual recriminations of the parties with respect to the other’s faults and vices afford the court no sure guide to the wisest and best choice. Provided the parties consent, the court can, and in a proper case should, make an investigation through the Probation Department to supplement the formal proof adduced by the parties. As was said by the court in Matter of Godinez v. Russo (49 Misc 2d 66, 68, supra): “ The Family Court should have the power, both as to the illegitimate as well as the legitimate child, only the duty to seek a determination required for the welfare and best interest of the child. ”
1 ‘ Particularly is this true, when it is considered that the Family Court is a unique socio-legal instrument provided with special facilities and powers to make such a disposition. This was the advantage contemplated between the creators of the Family Court Act. It permits the court through the use of a report from the Department of Probation and other related facilities a deep insight into the needs of the child as well as the relative financial, social and emotional abilities of the respective parties seeking custody. ”
Therefore, the court not being entirely content with the formal proof adduced by the parties in this case, upon stipulation of counsel, and pursuant to section 653 of the Family Court Act *738 and rule 60.1 of the Eules of the Family Court and the practice approved by the Court of Appeals of this State (Kesseler v. Kesseler, 10 N Y 2d 445) and followed in Matter of Godinez v. Russo (supra)[4] has requested and been furnished with a report from the Probation Department (copies of which have been furnished to counsel) concerning each of the parties to this proceeding, their attitudes toward the child and each other and a comparison of the environment in which the child would live in the event of an award of custody to the father or the mother. The court has carefully considered the report and based upon the testimony produced at the trial and the contents of the probation officer’s report, the court concludes that the interests and welfare of this child will be best served by awarding her custody to her mother.
The court is impressed by the interest and concern of the putative father for the welfare of his daughter and in spite of cogent social considerations militating against the granting of visitation privileges to the father of an illegitimate child (see dissenting opn., Carswell, J., in People ex rel. Meredith v. Meredith, supra, pp. 87-90, and dissenting opn., Breitel, J., in People ex rel. “Francois ” v. “Ivanova”, supra, pp. 318-323) is willing, provided the mother consents, that he be awarded some visitation privileges.
Counsel for the respective parties are directed to confer with the court to establish a mutually satisfactory visitation arrangement and for the fixation of a reasonable amount for the support and maintenance of the child. In the event satisfactory visitation privileges and support cannot be arranged by mutual agreement the matter will be restored to the calendar for an appropriate determination by the court.

 The petitioner places the date as January, 1967.

. Section 240 of the Domestic Relations Law refers to a writ of habeas corpus to obtain “ the custody of or right to visitation with any child of a marriage ”. Although section 70 of the Domestic Relations Law makes no reference to a child of the marriage, the Supreme Court in People ex rel. Mahoff v. Matsoui (139 Mise. 21, 24) said that the section “ probably has relation only to children born in wedlock ”.

 Cf. Matter of Godinez v. Russo (49 Mise 2d 66, 68) in which the court opines “ that the distinction between legitimate and illegitimate children insofar as the latter, in matters of custody, carries with it the presumption of custody in favor of the natural mother, should be reconsidered and abolished in the Family Court. It is submitted that the proper standard is that which is enumerated in section 70 of the Domes! ic Relations Law * * * regardless of the manner of the birth of the child involved. ‘ i:' The Family Court should have the power, both as to the illegitimate as well as the legitimate child, only the duty to seek a determination required for the welfare and best interest of the child. ”

 (Cf. Herb v. Herb, 8 A D 2d 419; Matter of Johnson v. Johnson, 21 A D 2d 256; Knapp v. Knapp, 21 A D 2d 761; Edwards v. Kibler, 24 A D 2d 1076; Matter of Fellows v. Fellows, 25 A D 865 holding that in the absence of a stipulation permitting their use, it is improper for the court to base its determination upon probation reports or psychiatric reports which are made confidentially to the court and the contents of which are not revealed to the parties or counsel,)