M. Michael Potokeb, J.
This case poses the petitioners, the maternal great-aunt and grandmother respectively, against the respondent putative father, in a dispute concerning the custody of a child known as Rochelle Porter, born out of wedlock on August 12, 1965. The natural mother of the child died on February 17, 1967.
The petitioners contend that the respondent is not related to the child, nor is he a proper person to have custody. They, on the other hand, claim to be related by blood and interest to the child, are ready, willing and able to assume the responsibility of supporting, maintaining and rearing her, and consequently, it is in the best interest of the child that they be awarded her custody.
The respondent in furtherance of his claim, seeks to introduce evidence that he is the father of the child even though his paternity was never legally established. The court is therefore asked to determine the question, seemingly novel in this jurisdiction, as to the admissibility under CPLR 4519 (dead-man’s statute) of respondent’s testimony concerning acts of sexual intercourse and cohabitation with the deceased mother.
The disability imposed by the statute is plain. That the acts of intercourse and cohabitation are transactions within the meaning of the statute is also plain. (See Matter of Kelly, 238 N. Y. 71 [1924], and Matter of Christie, 167 Misc. 484 [1938].) However, these cases involved matters of pecuniary interest.
This court holds that testimony as to acts of intercourse and cohabitation between respondent and decedent are admissible, and that such testimony does not come within the prohibition of CPLR 4519. It is the opinion of this court that the " dead-man’s statute ” as it is popularly known, is, and has been, designed to protect a decedent’s estate from the prejudice of uncontroverted or perjured testimony where there is a pecuniary or property interest involved. There is no such pecuniary or property interest in this case. The issue to be determined is one of status; i.e., the blood relationship between respondent and child rather than the right to property. The object of the litigation in the case at bar is not property or money or tangible economic benefit, but the custody of a defenseless child, whose best interests must be held paramount. (See Mottla, New York Evidence, §§ 378-382, where the commentator’s approach to the “ dead-man ” statute is entirely in pecuniary terms.) *579 TMs court finds support for its view in Colon v. Tristani (45 P. R. 219). In interpreting the effect of an analogous “ dead-man’s ” statute in an action to establish paternity against a deceased putative father, the court held the following (p. 221):
“We are not dealing with a claim against the property constituting the estate of [the deceased putative father]. An action of filiation is involved, in which no evidence with regard to the property may be adduced, inasmuch as the same would be entirely irrelevant. Once the filiation is established, the person adjudged to be a natural child shall have all the rights granted to him by law; but this in no manner changes the nature of the action nor requires any other evidence than that tending to prove the status as a natural child, which is the essential purpose sought.
“We admit that the act cited by the defendant is in force, as one of the exceptions to the general rule, and hold that this exception should be applied within the limitations imposed by the same act, without extending it to cases which are not directly related to transactions or dealings of a decedent concerning his property.”
Having determined to admit respondent’s testimony as to his transactions with the deceased mother respondent testified to acts of intercourse and cohabitation which would tend to prove that he is the child’s father. He related that he met decedent two years before the child’s birth, shared an apartment with her for four years until her death, was sexually intimate with her and that the child was conceived during that period. He added that the child herself had always lived with him, that she was continually covered by his employer health and welfare plan and that he always provided for her support, maintenance and welfare. It was he who enrolled her in school, attended parent-teacher meetings and signed her report cards.
Bespondent’s testimony was corroborated in many respects by his mother and cousin.
Petitioners contend that they maintained custody of the child since her mother’s death except that the child physically resided with respondent’s mother during the school week for which they paid $30 per week because they were employed.
In support of their claim that respondent is not the putative father petitioners offered in evidence the child’s certificate of birth (petitioners’ Exhibit 1) and called the court’s attention to the fact that the space reserved for the child’s father is blank. The exhibit was received for the sole purpose of proof of birth and not for other added or deleted items. It is the rule in New *580 York that a birth or death certificate is admissible as a public document only to show the fact of birth or death, and not as evidence of the additional facts recited therein pursuant to law. (Richardson, Evidence [Prince, 8th ed.], § 366.)
From the evidence adduced the court concludes that the weight of the evidence is sufficient to establish that respondent is the natural father of the child, has held himself out to be so since the child’s birth, and has been accepted as such by his family and associates, the family of the natural mother, and other members of the community.
With the respondent’s paternity established, the court must give due weight to the present law in this State which holds that it is in a child’s best interest to be with its natural parent unless such parent is unfit, or has abandoned or surrendered the child, or other “ compelling reasons ” require otherwise. (Matter of Spence-Chapin Adoption Serv. v. Polk, 29 N Y 2d 196; People ex rel. Scarpetta v. Spence-Chapin Adoption Serv., 28 N Y 2d 185; People ex rel. Kropp v. Shepsky, 305 N. Y. 465; People ex rel. Portnoy v. Strasser, 303 N. Y. 539; People ex rel. “PP” v. Sackey, 40 A D 2d 130 [3d Dept., 1972]; Matter of Spencer, 74 Misc 2d 557 [Family Ct., N. Y. County, 1973].)
The court is aware of no rule of law that would require a distinction to be made in applying this standard to an unwed natural father. The cases, in fact, indicate quite the opposite. It has been held that a father, even though unwed, has a right to the custody of his natural child superior to the world, although inferior to the natural mother. (People ex rel. Trainer v. Cooper, 8 How. Prac. 288 [1853].) In People ex rel. Meredith v. Meredith (272 App. Div, 79, 82, affd. 297 N Y. 692), the rule is stated that: “ the mother has the right to the custody of an illegitimate child as against the father, though the father has the right to the custody as against a stranger. [Citations omitted.] ” (See, also, Matter of Cornell v. Hartley, 54 Misc 2d 732.)
If these authorities were not sufficient, the court would nevertheless be constrained to heed the decision of the United States Supreme Court in Stanley v. Illinois (405 U. S. 645). It was held therein that it was violative of due process to deprive an illegitimate father of custody of his children, without a determination of his fitness, where such a determination was required precedent to custody deprivation in the case of a legitimate parent or unwed mother. The court recognized that the interests of a father of an illegitimate child are no different from those of other parents.
*581 The court notes that the burden of proving the custodial unfitness of the parent rests with the party seeking to deprive the parent of custody (People ex rel. Scarpetta v. Spence-Chapin Adoption Serv., 28 N Y 2d 185,192-193, supra), a burden which the court finds the petitioners have failed to sustain.
In recent months, the New York standard of parental “ fitness ” in custody determinations has been vigorously criticized. There is a body of opinion, both amongst members of the Bench and Bar, and amongst the community of behavioral scientists, that the present rule as enunciated in Matter of Spence-Chapin Adoption Serv. v. Polk (29 N Y 2d 196, supra) and People ex rel. Scarpetta v. Spence-Chapin Adoption Serv. (supra) should be changed. Specifically, this body of opinion would modify or scrap the rule of law that awards custody of a child to the natural parent who is “ fit ”, and substitute in its place, the principle that custody will be awarded solely on the basis of the child’s “ best interests,” whether to parent or nonparent. (See Pact v. Pact, 70 Misc 2d 100; Matter of Mittenthal v. Dumpson, 37 Misc 2d 502; People ex rel. Rothman v. Jewish Child Care Assn., N. Y. L. J., Nov. 1, 1972, p. 17, col.. 2 [Sup. Ct., N. Y. County].)
Most recently it was observed in Matter of Catherine S. (74 Misc 2d 154, 161-162 [Family Ct., Kings County, 1973, Zukermast, J.]) that, “ blind adherence to a parental right approach inhibits adequate consideration of the best interests of the child, which must be viewed as the primary concern of the law. All too often there is a conclusive presumption that the child’s welfare requires that custody be awarded to the ‘ fit ’ natural parent as against the nonparent. Such arbitrary rules can be no substitute for careful inquiry and a thorough investigation of the facts.”
A thorough inquiry was conducted into the child’s present circumstances. The court interviewed the child (Matter of Lincoln v. Lincoln, 24 N Y 2d 270) and considered the reports and recommendations of probation officers. The child has indicated to the court that she wished to remain in her father’s custody and that she has not known any other home. She loves her mother (respondent’s paramour) and her brother (a child born to her “ parents ” last year).
Written probation reports received in evidence on consent and pursuant to section 653 of the Family Court Act (see, also, Matter of Cornell v. Hartley, 54 Misc 2d 732, supra) disclose that Miss O. has shown great interest and affection for Rochelle who refers to her as “ mommy.” The child projects the picture *582 of a happy, well-adjusted child. The family unit is serving as a positive emotional and material influence on the development of the child and there is no reason to conclude that the child would be better served by a change of custody; on the contrary, such a change would be grossly unfair and potentially damaging to this child. Therefore, in view of the circumstances the writ is denied and this child is to remain in the custody of the respondent.
In consideration of the continuing interest of the petitioners in Rochelle and of the child’s desire to maintain a relationship with them, the parties are herewith directed to mutually arrange a schedule of visitation rights within a reasonable time. If the parties are unable to reach such agreement then they may apply to the court for its assistance and direction.