Edith Miller, J.
On February 20, 1974 the petitioner Cardinal Hayes Home instituted a proceeding in the New York County Family Court pursuant to section 384 of the Social Services Law and article 6 of the Family Court Act to sever all parental ties and to acquire guardianship over the child Donna P. for the purpose of adoption by the foster parents.
*130 Donna P. was born out-of-wedlock on August 3, 1962. She lived with her natural mother Ruthie P. until 1968 when .she entered the care and custody of the Commissioner of Social Services. A neglect proceeding was instituted by the commissioner in 1969 and following an adjudication of neglect by the mother, the child was placed by the Kings County Family Court in the care and custody of the Commissioner of Social Services. Said placement has been extended several times by the Kings County Family Court in accordance with law.
Cardinal Hayes Home is the agency charged by the commissioner with providing foster care for the child. In 1971 the agency placed Donna with foster parents with whom she has resided ever since. The foster parents have provided Donna with the only real home she has ever known and" wish to convert this de facto parent-child relationship into a de jure relationship by adoption.
Ruthie P., the natural mother of Donna died on October 26, 1973. In December 1973, two months after the death of the mother and more than 11 yeans after the birth of the child, one Gregorio M. acknowledged paternity of the child in writing before the New York City Department of Health. Mr. M. opposes the petition herein and contends that his parental rights as the natural father should not be permanently terminated and that Donna should be permitted to live with him and his family.
The petitioner herein objected to the respondent father appearing in the action on 'the grounds that the father had no standing. This position rests on the fact that: (a) no paternity proceeding had ever been instituted against him by the mother, the Commissioner of Social Services, or by any other person authorized to originate proceedings pursuant to section 522 of the Family Court Act; and (b) the natural father had never commenced an action for declaratory judgment in the Supreme Court adjudicating him to be the father of the child pursuant to the authority of Matter of Roe v. Roe (65 Misc 2d 335).
The court was aware that to permit a man to be recognized as the natural father based solely on his admission of paternity, after the death of the mother when she would not be available to testify to the contrary, would be extending parental rights to an individual who might not be legally entitled to same. Therefore a preliminary hearing was held on August 8, 1974 to inquire into the parental relationship of Mr. M., if any, to the child. Based on the testimony adduced at the hearing, the court determined pursuant to the authority of People ex rel. Blake v. Charger (76 Misc 2d 577) that Mr. M. would be recognized as *131 the natural father for purposes of this proceeding only so that due process would be afforded to him. Hearings were held subsequently on September 25, 1974 and October 23, 1974.
It is agreed that Donna P. is under 18 years of age and that she is in placement with the petitioner, an authorized agency in conformity with the statutory requirements for initiating a proceeding to terminate parental rights. There is no contention that Mr. M. is not physically or financially able to care for the child and has been physically and financially able to do so from the date of her birth. What is in dispute is the statutory duty of the agency in relation to the natural father now that he has come forth. The Family Court Act (§ 614, subd. 1, pars, [c], [d]) clearly defines the obligations of the agency vis-a-vis the parents of a child in placement.
It is the contention of Mr. M. that his belated acknowledgement of the child now requires the agency to make diligent efforts to encourage and strengthen the parental relationship so that Donna can be discharged to him rather than be adopted by her foster parents. In support of this contention, he relies upon the landmark case of Stanley v. Illinois (405 U. S. 645) which extends legal recognition to the status of unwed fathers and New York law which requires that absent a finding of unfitness, a natural parent has superior rights to an agency. (Matter of Spence-Chapin Adoption Serv. v. Polk, 29 N Y 2d 196; People ex rel. Scarpetta v. Spence-Chapin Adoption Serv., 28 N Y 2d 185.)
It is the contention of the agency that during the years in placement, Mr. M’s relationship to the child was unknown to them. Inasmuch as there had never been an adjudication of paternity, no evidence that he had lived with the natural mother and Donna, and no evidence that he had acknowledged paternity in writing or 'by furnishing support, the agency had never thought of Mr. M. as a resource for the child. According to the record, the agency had made efforts with those persons who had a relationship with the child and if Mr. M. had expressed any interest in the child, they would have been willing to work with him too.
It is the understanding of this court that the essential core of the United States Supreme Court’s decision in Stanley v. Illinois was expressed when it was stated that (supra, p. 651) : “ The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection.” By this statement the Supreme Court recognized that Peter Stanley, the *132 natural father, had lived intermittently for 18 years with Joan Stanley, the natural mother, and the children. He had supported the children financially and emotionally by his assumption of parental responsibilities over a long period of time. Therefore, it was unconscionable for the State to ignore this meaningful familial realtionship which only lacked the imprimatur of a ceremonial marriage.
In the matter herein, Mr. M., although he knew he was the father of Donna from the beginning, did not publicly acknowledge the child until more than 11 years after her birth. The record established that whenever the natural mother confronted him with the fact of parenthood, he denied paternity and his denial of paternity precipitated several quarrels, some of which were witnessed by the respondent father’s own sister. According to his own testimony, Mr. M. did not admit to anyone, not' even to his mother, that he was the father of the child. Furthermore, when he was contacted by the Department of Social Services, in respect to the child, he would neither acknowledge paternity nor furnish support. From the moment of her birth up to the present time, Donna has been entirely supported by public funds.
In addition, this record shows that unlike the father in the Stanley case, Mr. M. never created a parental relationship with Donna on the infrequent occasions he saw her before placement. During the formative years of her life, Donna never knew him to be her father and according to the evidence before the court, at one time she thought another man to be her father. The court is aware that Mr. M. is a married man who has always lived with his family and therefore, full assumption of parental responsibilities in respect to the child might have created an awkward situation for him. However, inasmuch as he had actual knowledge that the mother of the child had become a drug addict, it was incumbent upon him as an absolute minimum to take a personal interest in the quality of care being provided for Donna to ensure that the 'child was receiving proper food, ■shelter and clothing and not left in destitute circumstances. His conflicting testimony to justify nonfeasance is inexcusable.
Under the doctrine of the Stanley case in respect to a nonadjudicated father, an agency must recognize the claims of an unwed father who has recognized the child in some tangible way. However, absent affirmative action on the part of the natural father in respect to acknowledging paternity of the child in some way, the agency has no affirmative burden by statute or case law to ferret out a possible putative father. *133 However, this court believes that the agency has a duty to .serve notice in any court proceeding to terminate parental rights upon any person or persons who it has reason to believe might be the father, and in the matter herein, the agency has done so.
Therefore, the court finds that in respect to the natural father, the evidence establishes by a fair preponderance of the evidence the allegations as required by the Family Court under article 6 of the Family Court Act. The court finds that Donna is a child under 18 years of age who has been placed in the care of Cardinal Hayes Home, an authorized agency. The court finds that diligent efforts to strengthen the parent-child relationship would be detrimental to the moral and temporal welfare of the child in that the natural father failed to function as a parent for more than 11 years prior to his public acknowledgement of paternity in 1973. There is no evidence in the record that presents, cards, letters or telephone communications were ever sent from the father to the child. Except for seeing her on the street on a few occasions, he did not visit the child. Therefore, to introduce him into the life of the child at this time solely on biological grounds would not be in the best interest of the child. The court finds that the clear and convincing evidence demands that Donna’s status in the foster home should now*become secure and permanent through legal adoption by the foster parents.
The court finds that the natural mother died on October 26, 1973 and that in respect to the mother the care and custody of the child pursuant to section 384 of the Social Services Law is committed to the Cardinal Hayes Home.
The court finds that inasmuch as the agency has sustained its burden under article 6 of the Family Court Act in respect to the natural father, that the custody of the natural father is permanently terminated and awarded to Cardinal Hayes Home with the direction that it proceed to take such steps as are required by law to achieve the adoption of Donna by her foster parents.